**CT Corporation**

**Service of Process Transmittal**
01/19/2017
CT Log Number 530522790

TO:     Jennifer Lauro
        The Hanover Insurance Group
        N-430, 440 Lincoln St
        Worcester, MA 01653-0002

RE:     **Process Served in Texas**

FOR:    The Hanover Insurance Company  (Domestic State: NH)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | PAT DAVIS, INC., Pltf. vs. HANOVER INSURANCE GROUP, Dft. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Citation, Original Petition(s), Attachment(s) |
| **COURT/AGENCY:** | 251st Judicial District Court of Randall County, TX Case # 71259C |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Dallas, TX |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 01/19/2017 postmarked on 01/17/2017 |
| **JURISDICTION SERVED :** | Texas |
| **APPEARANCE OR ANSWER DUE:** | By 10:00 a.m., on the Monday next following the expiration of 20 days after service |
| **ATTORNEY(S) / SENDER(S):** | Steven L. Hoard MULLIN HOARD & BROWN, L.L.P. 500 South Taylor, Suite 800 Amarillo, TX 79120-1656 (806) 372-5050 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 01/19/2017, Expected Purge Date: 01/24/2017 |
| | Image SOP |
| | Email Notification,  Service of Process  ogclitmail@hanover.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 1999 Bryan Street Suite 900 Dallas, TX 75201 |
| **TELEPHONE:** | 214-932-3601 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



U.S. POSTAGE
PAID
CANYON, TX
79015
JAN 17 17
AMOUNT
$8.62
R2305E129910-02

75201

1000

CERTIFIED MAIL®

9414 7266 9904 2072 2171 07



JO CARTER, DISTRICT CLERK
RANDALL COUNTY
2309 RUSSELL LONG BLVD, STE 110
CANYON TX 79015

CT CORP SYSTEM
1999 BRYAN ST. STE. 900
DALLAS, TX 75201

Amarillo, TX 791
TUE 17 JAN 2017
PM

# THE STATE OF TEXAS

**TO:  HANOVER INSURANCE GROUP, BY SERVING ITS REGISTERED AGENT, CT CORP SYSTEM, 1999 BRYAN, ST., STE. 900, DALLAS, TX  75201,** Defendant in the hereinafter styled and numbered cause:

       **YOU HAVE BEEN SUED.** You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m., on the Monday next following the expiration of twenty (20) days after you were served this citation and petition, a default judgment may be taken against you.

       **YOU ARE THEREFORE COMMANDED** to appear before the **251st District Court** of Randall County, Texas, to be held at the Justice Center, 2309 Russell Long Blvd, Canyon TX  79015 of said County, by filing such written answer to the petition of Plaintiff, a copy of which accompanies this citation in **Cause No.  71259C,** styled:

**PAT DAVIS, INC., Plaintiff**
**VS.**
**HANOVER INSURANCE GROUP, Defendant**

filed in said Court on  December 28, 2016.

       **ISSUED AND GIVEN UNDER MY HAND AND SEAL OF SAID COURT** at office, on this the 16th day of January, 2017

                       **JO CARTER**
                       Clerk of the District Courts
                       Randall County, Texas
                       2309 Russell Long Blvd. Ste 110
                       Canyon, Texas  79015

                       By: _____ Deputy

The name and address of Plaintiff's attorney is: **STEVEN L. HOARD, PO BOX 31656, AMARILLO, TX  79120-1656, 806-372-5050**

## CLERK'S CERTIFICATE OF SERVICE

EXECUTED , on this the 16th day of January, 2017, by mailing a true copy of this citation, with true copy of the aforesaid pleading attached thereto, via certified mail, addressed to **CT CORP SYSTEM, 1999 BRYAN ST. STE. 900, DALLAS, TX  75201,**and endorsed thereon "Return Receipt Requested".  Service upon the defendant is evidenced by the return receipt incorporated herein and attached hereto.

TO CERTIFY WHICH WITNESS my hand officially this on this the 16th day of January, 2017.

                       JO CARTER, District Clerk
                       Randall County, Texas

ATTACH RETURN
RECEIPT HERE

                       By _____ Deputy

**COPY**

IN THE _____ DISTRICT COURT

RANDALL COUNTY, TEXAS

| | | |
|---|---|---|
| PAT DAVIS, INC. | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Cause No. 71259C _____ |
| | § | |
| HANOVER INSURANCE GROUP | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL PETITION FOR
## DECLARATORY JUDGMENT, EQUITABLE RELIEF & DAMAGES

TO THE HONORABLE COURT:

COMES NOW, Pat Davis, Inc. ("Plaintiff") and files this Original Petition for Declaratory Judgment and damages against Hanover Insurance Group ("Hanover" or "Defendant").

## I.
## DISCOVERY PLAN

1.     Plaintiff intends to conduct discovery under a Level II Discovery Control Plan in accordance with Rule 190.3 of the Texas Rules of Civil Procedure.

## II.
## PARTIES

2.     Plaintiff, Pat Davis, Inc., is a corporation doing business in and organized under the laws of the State of Texas.

3.     Defendant Hanover is a foreign corporation doing business in the State of Texas. Hanover may be served with process by delivery to its registered agent, CT Corp System, 1999 Bryan St. Ste. 900, Dallas, Texas 75201.

**COPY**

6003/34/01309208.DOC / 1

## III.
## JURISDICTION AND VENUE

4.     This Court has jurisdiction over defendant Hanover because it is licensed to do business and has availed itself of the privileges and benefits of conducting business in the State of Texas, including entering into contracts which are to be performed in the State of Texas. *See* TEX. CIV. PRAC. & REM. CODE § 17.042. This Court has jurisdiction over the controversy because the damages are within the jurisdictional limits of the Court.

5.     Venue is proper in Randall County because Randall County is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred. TEX. CIV. PRAC. & REM. CODE § 15.002.

## IV.
## FACTS AND BACKGROUND

6.     On or about March 22, 2016, Plaintiff entered into a Miscellaneous Professional Liability Policy with Defendant (the "Policy"). The Policy covers the period from March 26, 2016 to March 26, 2017. A true and correct copy of the Policy is attached hereto as Exhibit "A."

7.     On or about November 1, 2016, James Austin III ("Austin")—who is an investor in certain real estate investment entities that hired Plaintiff to manage their properties (the "Properties")—filed suit against Plaintiff in Randall County alleging that Austin was damaged by Plaintiff's negligent hiring and supervision of a bookkeeper who stole money from accounts owned by the Properties (the "Underlying Suit"). The Underlying Suit also alleged that Plaintiff breached his fiduciary duties to Austin by failing to ensure the accuracy of the Properties' financial statements and by failing to oversee the bookkeeper.

8.     By letter dated November 9, 2016, counsel for Plaintiff made formal demand upon Defendant that Defendant defend and indemnify Plaintiff from the Underlying Suit in

accordance with the terms of the Policy. Enclosed with that letter, Plaintiff also provided
Defendant with the original petition filed in the Underlying Suit. A true and correct copy of the
November 9, 2016 letter and enclosed petition is attached hereto as Exhibit "B."

9.     By letter dated December 8, 2016, Defendant refused to defend and indemnify
Plaintiff from the Underlying Suit, citing Exclusion 17 of the Policy, which excludes claims
"arising out of or resulting, directly or indirectly from any actual or alleged commingling,
misappropriation or improper use of funds or monies." A true and correct copy of the December
8, 2016, letter is attached hereto as Exhibit "C."

## V.
## CAUSES OF ACTION

### A. Count 1—Suit for Declaratory Relief

10.    Paragraphs 1-9 are incorporated herein by reference.

11.    As set forth above, Plaintiff is an insured under an insurance policy issued by
Defendant for Plaintiff's benefit.

12.    Austin filed the Underlying Suit asserting a liability claim against Plaintiff that, if
true, would be covered by the Policy. The Underlying Suit asserts claims for negligence and
breach of fiduciary duty, and all damages claimed by Austin arise from these allegations. The
suit does not allege that Plaintiff commingled, misappropriated, or improperly used any funds or
moneys, or that Plaintiff otherwise performed any intentional act. Pursuant to Section A.1. of the
Policy, the Policy covers claims made against Plaintiff arising from a "wrongful act in the
rendering or failure to render professional services" by Plaintiff. "Wrongful acts" are defined in
Section D of the Policy as "any actual or alleged *negligent act*, error, omission, or misstatement
committed in your professional services." (emphasis added).   The claims asserted against
Plaintiff in the Underlying Suit arise solely out of Plaintiff's alleged negligence in the hiring and

*Plaintiff's Original Petition – Page 3*

6003/34/01309208.DOC / 1

supervision of its bookkeeper and its alleged breach of fiduciary duty related to the hiring and supervision of its bookkeeper. There are no allegations that Plaintiff stole or misappropriated any monies. Therefore, Exclusion 17 of the Policy does not apply because the claims against Plaintiff do not arise directly or indirectly out of the misappropriation of monies. In the alternative, Plaintiff pleads that Exclusion 17 of the Policy is ambiguous and must be construed in favor of Plaintiff.

13.    Plaintiff gave proper notice of the suit and a copy of the related petition to Defendant on November 9, 2016.

14.    Defendant has not defended Plaintiff in the underlying suit as required by the terms of the Policy. Notwithstanding the fact that the Underlying Suit alleges only that Plaintiff was negligent and breached its fiduciary duties, Defendant has claimed that it is not obligated to defend or indemnify Plaintiff because Plaintiff's bookkeepers engaged in conduct not covered by the Policy, namely misappropriation or improper use of funds or monies. If the Underlying Suit includes one potentially covered claim, Defendant is obligated to pay for the entire defense, and the allegations in the Underlying Suit are to be liberally interpreted in favor of the insured. *Zurich Am. Ins. v. Nokia, Inc.* 268 S.W.3d 487, 491 (Tex. 2008).

15.    Attorney's Fees. Plaintiff is entitled to recover reasonable and necessary attorney fees under the Texas Declaratory Judgments Act.

## B. Count 2—Breach of Contract

16.    In addition to Plaintiff's claim for declaratory relief, Defendant breached its contract with Plaintiff. Paragraphs 1-15 are incorporated herein by reference.

17.    The Policy, dated March 22, 2106, is a valid, enforceable written contract for professional liability insurance covering the period from March 26, 2106 to March 26, 2017. The Policy provided that Plaintiff would, as pertinent here, notify Defendant of claims against it. The

*Plaintiff's Original Petition – Page 4*

Policy provided that Defendant would, among other things, defend and indemnify Plaintiff from "any actual or alleged *negligent act*, error, omission, or misstatement committed in your professional services." (Policy, Sec. D). Plaintiff, as the insured under the Policy, is a proper party to sue for breach of contract.

18.     Plaintiff has performed all of its contractual obligations under the Policy by paying all amounts required by the contract and by notifying Defendant of the Underlying Suit against Plaintiff.

19.     Defendant has breached the contract by refusing to defend and indemnify Plaintiff from the Underlying Suit as required by the Policy. The Policy specifically covers claims for negligent acts committed in Plaintiff's provision of professional service, which is the basis of a cause of action alleged by the Underlying suit.

20.     Defendant's breach has caused damages and continues to cause damages to Plaintiff, which has been forced to retain counsel to answer and otherwise defend itself from the underlying suit. Plaintiff continues to incur damages in defense of the Underlying Suit.

21.     <u>Attorney fees</u>. Plaintiff is entitled to recover reasonable and necessary attorney fees under TEX. CIV. PRAC. & REM. CODE § 38.001 because this is a claim for breach of a written contract. Plaintiff has been required to retain counsel as a result of Defendant's breach.

## VI.
## CONDITIONS PRECEDENT

22.     All conditions precedent to Plaintiff's right to enforce the Policy have been performed or have occurred.

*Plaintiff's Original Petition – Page 5*

## VII.
### DAMAGES

23.     Plaintiff seeks monetary relief of over $200,000 but not more than $1,000,000, exclusive of attorneys' fees and costs.

### PRAYER

WHEREFORE, Plaintiff prays that Defendant be cited to appear and answer, and that upon final hearing, Plaintiff have:

a)     A declaratory judgment obligating Defendant to honor its duty to defend Plaintiff by providing a full defense to Plaintiff and paying all future defense costs in the Underlying Suit and any amounts for which Plaintiff is found liable in the Underlying Suit;

b)     Damages for amounts expended by Plaintiff in defense of the Underlying Suit;

c)     Court costs;

d)     Attorneys' fees; and

e)     Such other and further relief, general or special, to which Plaintiff may show itself justly entitled at law or in equity.

December 28, 2016                    Respectfully submitted,
Amarillo, Texas

**MULLIN HOARD & BROWN, L.L.P.**
Steven L. Hoard, TSB No. 09736600
Johnathan H. Hinders, TSB No. 24092517
500 South Taylor, Suite 800
P.O. Box 31656
Amarillo, Texas 79120-1656
TEL: (806) 372-5050
FAX: (806) 372-5086
shoard@mhba.com
jhinders@mhba.com

/s/ Steven L. Hoard
*Attorneys for Pat Davis, Inc.*

*Plaintiff's Original Petition – Page 6*

# Exhibit A

## Customer Notice of Privacy Policy and Producer Compensation Practices Disclosures

## Privacy Policy Disclosure

### *Collection of Information*

We collect personal information so that we may offer quality products and services. This information may include, but is not limited to, name, address, Social Security number, and consumer reports from consumer reporting agencies in connection with your application for insurance or any renewal of insurance. For example, we may access driving records, insurance scores or health information. Our information sources will differ depending on your state and/or the product or service we are providing to you. This information may be collected directly from you and/or from affiliated companies, non-affiliated third parties, consumer reporting agencies, medical providers and third parties such as the Medical Information Bureau.

We, and the third parties we partner with, may track some of the web pages you visit through cookies, pixel tagging or other technologies. We currently do not process or comply with any web browser's "do not track" signals or similar mechanisms that request us to take steps to disable online tracking. For additional information regarding online privacy, please see our online privacy statement, located at www.hanover.com.

### *Disclosure of Information*

We may disclose non-public, personal information you provide, as required to conduct our business and as permitted or required by law. We may share information with our insurance company affiliates or with third parties that assist us in processing and servicing your account. We also may share your information with regulatory or law enforcement agencies, reinsurers and others, as permitted or required by law.

Our insurance companies may share information with their affiliates, but will not share information with non-affiliated third parties who would use the information to market products or services to you.

Our standards for disclosure apply to all of our current and former customers.

### *Safeguards to Protect Your Personal Information*

We recognize the need to prevent unauthorized access to the information we collect, including information held in an electronic format on our computer systems. We maintain physical, electronic and procedural safeguards intended to protect the confidentiality and integrity of all non-public, personal information, including but not limited to social security numbers, driver's license numbers and other personally identifiable information.

### *Internal Access to Information*

Access to personal, non-public information is limited to those people who need the information to provide our customers with products or services. These people are expected to protect this information from inappropriate access, disclosure and modification.

### *Consumer Reports*

In some cases, we may obtain a consumer report in connection with an application for insurance. Depending on the type of policy, a consumer report may include information about you or your business, such as:

* character, general reputation, personal characteristics, mode of living;
* credit history, driving record (including records of any operators who will be insured under the policy); and/or
* an appraisal of your dwelling or place of business that may include photos and comments on its general condition.

### *Access to Information*

Upon written request, we will inform you if we have ordered an investigative consumer report. You have the right to make a written request within a reasonable period for information concerning the nature and scope of the report and to be interviewed as part of its preparation. You may obtain a copy of the report from the reporting agency and, under certain circumstances, you may be entitled to a copy at no cost.

You also may review certain information we have about you or your business in our files. To review information we maintain in our files about you or your business, please write to us, providing your complete name, address and policy number(s), and indicating specifically what you would like to see. If you request actual copies of your file, there may be a nominal charge.

We will tell you to whom we have disclosed the information within the two years prior to your request. If there is not a record indicating that the information was provided to another party, we will tell you to whom such information is normally disclosed.

There is information that we cannot share with you. This may include information collected in order to evaluate a claim under an insurance policy, when the possibility of a lawsuit exists. It may also include medical information that we would have to forward to a licensed medical doctor of your choosing so that it may be properly explained.

### Correction of Information

If after reviewing your file you believe information is incorrect, please write to the consumer reporting agency or to us, whichever is applicable, explaining your position. The information in question will be investigated. If appropriate, corrections will be made to your file and the parties to whom the incorrect information was disclosed, if any, will be notified. However, if the investigation substantiates the information in the file, you will be notified of the reasons why the file will not be changed. If you are not satisfied with the evaluation, you have the right to place a statement in the file explaining why you believe the information is incorrect. We also will send a copy of your statement to the parties, if any, to whom we previously disclosed the information and include it in any future disclosures.

### Our Commitment to Privacy

In the insurance and financial services business, lasting relationships are built upon mutual respect and trust. With that in mind, we will periodically review and revise our privacy policy and procedures to ensure that we remain compliant with all state and federal requirements. If any provision of our privacy policy is found to be non-compliant, then that provision will be modified to reflect the appropriate state or federal requirement. If any modifications are made, all remaining provisions of this privacy policy will remain in effect. For more detailed information about our customer privacy policy (including any applicable state-specific policies) and our online privacy statement, visit our Web site, located at www.hanover.com.

### Further Information

If you have questions about our customer privacy policy (including any applicable state-specific policies) or our online privacy statement, or if you would like to request information we have on file, please write to us at our Privacy Office, N435, The Hanover Insurance Group, Inc., 440 Lincoln Street, Worcester, MA 01653. Please provide your complete name, address and policy number(s). A copy of our Producer Compensation Disclosure is also available upon written request addressed to the attention of the Corporate Secretary, N435, The Hanover Insurance Group, 440 Lincoln Street, Worcester, MA 01653.

### Producer Compensation Disclosure

Our products are sold through independent agents and brokers, often referred to as "Producers." We may pay Producers a fixed commission for placing and renewing business with our company. We may also pay additional commission and other forms of compensation and incentives to Producers who place and maintain their business with us. Details of our Producer compensation practices may be found at www.hanover.com.

This notice is being provided on behalf of the following Hanover Companies: The Hanover Insurance Group, Inc. - Allmerica Financial Alliance Insurance Company - Allmerica Financial Benefit Insurance Company - Allmerica Plus Insurance Agency, Inc. - Citizens Insurance Company of America - Citizens Insurance Company of Illinois - Citizens Insurance Company of the Midwest - Citizens Insurance Company of Ohio - Citizens Management, Inc. - AIX Ins. Services of California, Inc.- Campania Insurance Agency Co. Inc. - Campmed Casualty & Indemnity Co. Inc. - Chaucer Syndicates Limited- Educators Insurance Agency, Inc.- Hanover Specialty Insurance Brokers, Inc. - The Hanover American Insurance Company - The Hanover Insurance Company - The Hanover New Jersey Insurance Company - The Hanover National Insurance Company - Hanover Lloyd's Insurance Company - Massachusetts Bay Insurance Company - Opus Investment Management, Inc. - Professionals Direct Insurance Services, Inc. -Professional Underwriters Agency, Inc. - Verlan Fire Insurance Company - Nova Casualty Company - AIX Specialty Insurance Company.



**Hanover Professionals**
***DECLARATIONS***          **Advantage Portfolio**

*THIS IS A CLAIMS-MADE POLICY. PLEASE READ THE POLICY CAREFULLY.*

## MISCELLANEOUS PROFESSIONAL LIABILITY POLICY

| Policy Number | Coverage is provided by: | Agency | Agency Code |
|---|---|---|---|
| LHD A256124 02 | HANOVER INSURANCE COMPANY<br>440 LINCOLN STREET<br>WORCESTER, MA 01653 | AMWINS BROKERAGE OF | 1602298 |

**Issue Date:**      03/22/2016

**Item 1. Named Insured and Address:**
  PAT DAVIS INC
  PO Box 51620
  AMARILLO, TX 79159

**Item 3. LIMIT OF LIABILITY**
**Limit of Liability**

**Item 2. Policy Period:**
  Inception Date: 03/26/2016
  Expiration Date: 03/26/2017
  12:01 A.M. Standard Time at the address
  of the Named Insured as stated herein

a. $1,000,000 for each **Claim**; not to exceed
b. $1,000,000 for all **Claims** in the aggregate

**Item 4. DEDUCTIBLE:**          $5,000 Each Claim

**Item 5. RETROACTIVE DATE**: 03/26/2009

**Item 6. PROFESSIONAL SERVICES**

Property Manager, Leasing Agent and/or Real Estate Agent/Broker

**Item 7. PREMIUM FOR THE POLICY PERIOD:**


  **Total Coverage Premium: $3,235.00**
  **State Surcharge and Tax: (If applicable)**
  **State Guaranty Fund:** __$0.00__ **(if applicable)**
  **Total Premium: $3,235.00**

**Item 8. NOTICE OF A CLAIM**
Report any claim to the Company as required by Section **G. DUTIES IN THE EVENT OF CLAIM(S)  OR
POTENTIAL CLAIM(S)**:

The Hanover Insurance Company
P.O. Box 15145
Worcester, MA  01615

**National Claims Telephone Number**:  800-628-0250
**Facsimile:**  800-399-4734
**Email:**  firstreport@hanover.com

**Item 9.** Forms attached at issue:

| | | |
|---|---|---|
| 401-1268 | (08-12) | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC")<br>Advisory Notice to Policyholders |
| 910-0001 | (12-09) | Miscellaneous Professional Liability Insurance Policy |

| 910-0018 | (03-10) | Consent to Settle Amendment Endorsement |
| 910-0079 | (01-12) | Property Management Endorsement |
| 910-0106 | (04-15) | Texas Miscellaneous Professional Liability Amendatory Endorsement |
| 910-0140 | (10-11) | Notice to Policyholders: Information Regarding Extended Reporting Period ("ERP Coverage") |
| 910-0170 | (01-12) | Environmental Hazards Endorsement |
| 910-0243 | (06-15) | Texas Policyholder Notice |
| 910-0716 | (01-15) | Real Estate Professional Services Endorsement |
| SIG-1100 | (08-14) | Signature Page |

Item 10. Producer Name and Address: AMWINS BROKERAGE OF
5910 N CENTRAL EXPRESSWAY DALLAS TX 75206



## U.S. TREASURY DEPARTMENT'S
## OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

## ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this notice carefully.**

The Office of Foreign Assets Control ("OFAC") administers and enforces sanctions policy, based on Presidential Declarations of National Emergency.

OFAC has identified and listed numerous foreign agents, front organizations, terrorists, terrorists organizations, and narcotic traffickers as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site:  http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated United States sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.

Other limitations on the premiums and payments also apply.

## MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE POLICY

### TABLE OF CONTENTS

| | | |
|---|---|---|
| A. | COVERAGE – WHAT THIS POLICY INSURES | 2 |
| B. | DEFENSE AND SETTLEMENT (INCLUDED IN THE LIMIT OF LIABILITY) | 3 |
| C. | LIMIT OF LIABILITY AND DEDUCTIBLE | 3 |
| | 1. LIMIT OF LIABILITY | 3 |
| | 2. DEDUCTIBLE | 3 |
| | 3. REIMBURSEMENT | 3 |
| D. | DEFINITIONS | 3 |
| E. | EXCLUSIONS - WHAT THIS POLICY DOES NOT INSURE | 6 |
| F. | EXTENDED REPORTING PERIOD | 7 |
| G. | DUTIES IN THE EVENT OF CLAIM(S) OR POTENTIAL CLAIM(S) | 8 |
| H. | CONDITIONS | 8 |
| | 1. CANCELLATION AND NON RENEWAL | 8 |
| | 2. REPRESENTATIONS AND APPLICATION | 9 |
| | 3. LEGAL ACTION AGAINST US | 9 |
| | 4. CHANGE IN OWNERSHIP, CONTROL OR EXPOSURE | 9 |
| | 5. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US | 10 |
| | 6. ASSIGNMENT | 10 |
| | 7. SOLE AGENT FOR THE INSURED | 10 |
| | 8. COVERAGE TERRITORY AND VALUATION | 10 |
| | 9. OTHER INSURANCE | 10 |
| | 10. TWO OR MORE POLICIES, COVERAGE PARTS, OR ENDORSEMENTS ISSUED BY US | 11 |
| | 11. ALLOCATION | 11 |
| | 12. SEPARATION OF INSUREDS | 11 |
| | 13. CONFORMANCE TO STATUTE | 11 |
| | 14. SECTION TITLES | 11 |
| | 15. BANKRUPTCY | 11 |
| | 16. LIBERALIZATION | 11 |

## MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE POLICY

This is a CLAIMS-MADE AND REPORTED policy. Subject to the terms, conditions, exclusions and limitations of this policy, coverage is limited to liability for only those claims that are first made against you and reported to us in writing after the retroactive date and during the policy period or any optional extended reporting period, if exercised by you.

This is a "defense within limits" policy with claim expenses included within the limit of liability. The limit of liability available to pay damages will be reduced by amounts we pay for claim expenses as defined in the policy. Further note that amounts incurred for claim expenses and damages are subject to the deductible.

**Please read this policy carefully.**

Throughout this policy, the terms we, us and our refer to the Company providing this insurance. The terms you and your refer to the persons and entities insured under this policy. Other terms in bold print have special meaning and are defined in the policy.

### A.  COVERAGE – WHAT THIS POLICY INSURES

1.  Professional Services Coverage

   We will pay on your behalf those sums which you become legally obligated to pay as damages and claim expenses because of any claim made against you arising from a wrongful act in the rendering or failure to render professional services by you.

   The following additional requirements and limitations shall apply to coverage provided under A.1 above and A.3. and A.4. below:

   a.  The wrongful act must have first occurred on or after the applicable retroactive date(s);

   b.  You had no knowledge of facts which could have reasonably caused you to foresee a claim, or any knowledge of the claim, prior to the effective date of this policy; and,

   c.  The claim must first be made and reported to us in writing during the policy period or any extended reporting period, if applicable, and must arise from any wrongful act to which this policy applies.

2.  Disciplinary Proceedings Coverage

   We will pay on your behalf only defense expenses incurred in responding to a disciplinary proceeding commenced against you and reported to us in writing during the policy period, or which was commenced during the policy period and, if exercised, reported to us in writing during any optional extended reporting period. The maximum amount available for defense expenses for a disciplinary proceeding is $25,000 for each policy period, regardless of the number of disciplinary proceedings. Any payment made hereunder shall not be subject to the deductible and shall not reduce any applicable limit of liability. Inclusive within this coverage, we will pay up to $250 per day for any salaries and expenses of your employees required to attend or participate in any disciplinary proceeding. We shall not pay any damages incurred as a result of disciplinary proceedings.

3.  Personal Injury Coverage

   We will pay on your behalf those sums which you become legally obligated to pay as damages and claim expenses because of any claim made against you and reported to us in writing during the policy period, or any extended reporting period, if applicable, that arise from your professional services and are for:

   a.  Your defamation, libel, slander, product disparagement, trade libel, infliction of emotional distress or other tort related to disparagement or harm to the reputation or character of any person or entity;

   b.  Your invasion or interference with the right to privacy or publicity, including but not limited to false light, public disclosure of private facts, intrusion and invasion; or

   c.  Your causing a third party to be subject to false arrest, detention or imprisonment.

4.  Technology Professional Coverage

   We will pay on your behalf those sums which you become legally obligated to pay as damages and claim expenses because of any claim arising from your professional services and made against any insured and reported to us in writing during the policy period, or any extended reporting period, if applicable, that arises from:

a. The inability of an authorized third party to gain access to **computer services;**

b. **Unauthorized access** to **computer services** that results in:

1) The destruction, deletion or corruption of electronic data on **computer services**; or

2) Denial of service attacks against **computer services** or transmission of **malicious code** to **computer services.**

## B. DEFENSE AND SETTLEMENT (INCLUDED IN THE LIMIT OF LIABILITY)

**We** have the right to investigate and the exclusive right to defend any **claim** made under this **policy**, even if the allegations are groundless, false or fraudulent until there is a final adjudication against **you. We** are not obligated to defend any criminal investigation, criminal proceeding or prosecution against **you.** If a **claim** is not covered under this **policy, we** will have no duty to defend it.

Payment of **claim expenses** will reduce the amounts available to pay **damages. Our** duty to defend any **claim** or pay any amount as **damages** or **claim expenses** will cease when **our** limit of liability has been exhausted. Upon exhaustion of the limits of liability, **we** will tender control of the defense to the **named insured.** The **named insured** agrees to accept this tender of defense.

**We** will not settle a **claim** without the consent of the **named insured.** If the **named insured** refuses to consent to a settlement **we** recommend and which a claimant would accept, then **our** liability for the **claim** will not exceed the amount for which **we** would have been liable for **damages** if the **claim** had been settled as recommended by **us** and acceptable to the claimant, including **claim expenses** incurred up to the date of the **named insured's** refusal. After the time of the **named insured's** refusal, the **named insured** shall be responsible for all **damages** in excess of the amount for which the **claim** could have been settled, and all **claims expenses** incurred thereafter. For the purpose of this section, settlement includes, but is not limited to, any resolution of a **claim** that would have occurred as a result of any court-ordered process which the **named insured** chose not to accept.

The **named insured** is responsible for any fees or costs charged by a lawyer defending **you** or any other defense expenses incurred without **our** written consent.

## C. LIMIT OF LIABILITY AND DEDUCTIBLE

### 1. LIMIT OF LIABILITY

The limit of liability per claim limit shown on Item **3.a** of the Declarations page.is the most we will pay for the sum of all **damages** and **claim expenses** arising out of a single **claim** or a series of related **claims**, regardless of the number of persons or entities insured under this policy, number of **claims** made or the number of persons or entities making claims during the **policy period** or during any **extended reporting period**, if any.

The Aggregate limit shown on Item **3.b** of the Declarations.page is the most we will pay for the sum of all **damages** and **claim expenses** for all **claims** under this policy.

### 2. DEDUCTIBLE

a. **You** will pay the deductible amount shown in the Declarations. The deductible applies to each **claim. We** will not be required to make any payment for **claim expenses,** settlements reached, or judgments rendered in an otherwise covered **claim** unless and until **you** have paid the deductible in full. **You** must pay the deductible (i) immediately when invoiced or, (ii) in the event that offers of judgment or settlement demands are made which **you** and **we** agree should be accepted, prior to the expiration of the time period for responding to such offers or demands.

b. All **claim expenses** will first be subtracted from the limit of liability, with the remainder, if any, being the amount available to pay for **damages** after **you** have paid the deductible in paragraph **a.**

c. If **you** and **we** agree to use **mediation** to resolve any **claim** brought against **you** and if the **claim** is resolved by **mediation, your** deductible obligation for that **claim** will be reduced by 50%.

### 3. REIMBURSEMENT

In the event that **we** voluntarily choose or are compelled by a court of law to make any payment of the deductible and request reimbursement from **you,** the reimbursement is payable immediately, but no later than thirty (30) days after written demand.

## D. DEFINITIONS

**Acts of Terrorism** means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

a) Use or threat of an act that interferes with or disrupts electronic, communication, information, or Use or threat of force or violence; or

b) Commission or threat or a dangerous act; or

c) Commission or threat of an act that interferes with or disrupts electronic, communication or mechanical systems; and

2. When one or both of the following apply:

a) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

b) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or to express opposition to) a philosophy or ideology.

To qualify as an **act of terrorism**, the act must be determined by a governmental official or governmental authority to be an **act of terrorism** or cyber terrorism or that it was committed by a terrorist or cyber terrorist.

**Bodily Injury** means physical injury, sickness or disease and, if arising out of the foregoing, mental anguish, emotional distress, mental injury, shock, humiliation or death at any time.

**Claim** means a written demand or **suit you** receive.

**Claim expenses** means all expenses **we** incur or authorize in writing for the investigation, adjustment, defense or appeal of a **claim**. These expenses include fees charged by a lawyer, mediator or arbitrator with **our** consent for which **you** are obligated. **Claim expenses** also mean:

1. The premium on appeal, attachment or similar bond; and

2. Up to $250 per day per insured for supplemental payment for reasonable expenses incurred for attendance at hearings, trials, or depositions at **our** request or with our consent by such **insured**. Such payment shall not exceed $5,000 in the aggregate for all **insureds** in each **claim**.

**Claim expenses** do not include salaries, wages, fees, overhead or benefit expenses associated with:

3. Any **insured** except as specified in subparagraph **2**. above; or

4. **Our** employees.

**Company** means the insurance company that issued this policy, as shown on the Declarations page or referred to herein as **we, us,** or **our**.

**Computer services** means computers and associated input and output devices, data storage devices, networking equipment, backup facilities, and internet sites operated by and either owned by or leased by any third party for whom **you** provide **professional services**.

**Damages** means monetary judgments, awards or settlements unless otherwise excluded. **Damages** includes (i) pre-judgment interest; and (ii) post judgment interest that accrues after entry of judgment and before **we** have paid, offered to pay or deposited in court that part of judgment within the applicable limit of liability.

**Damages** also means punitive or exemplary **damages** or the multiple portions thereof, if insurable under the applicable law of the jurisdiction most favorable to the insurability of such **damages** provided such jurisdiction is where:

1. Those **damages** were awarded or imposed; or

2. Any **wrongful act** occurred for which such **damages** were awarded or imposed;

3. The **named insured** resides, is incorporated or has its principal place of business; or

4. **We** are incorporated or have our principal place of business.

**Damages** do not include any costs or expenses in complying with any demand for or award of **equitable relief**, even if such compliance is compelled as a result of a judgment, award or settlement.

**Defense expenses** means all expenses **you** incur in investigation, defense or appeal of any **disciplinary proceeding**.

**Disciplinary proceeding** means any proceeding by a disciplinary official or agency to investigate or prosecute charges alleging professional misconduct in the performance of **your professional services**.

**Domestic partner** means any natural person granted legal status as a domestic partner under any applicable federal, state or local law or under the provisions of any formal program established by the **named insured**.

**Employment practices** means any actual or alleged:

1. Wrongful termination of the employment of, or demotion of, or failure or refusal to hire or promote any person in violation of law or in breach of any agreement to commence or continue employment;

2. Unlawful employment discrimination;

3. Sexual harassment of an employee or applicant for employment; or

4. Retaliatory treatment against an employee on account of that employee's exercise or attempted exercise of his or her rights under law.

**Equitable relief** means a remedy not involving the payment of monetary damages.

**Extended reporting period** means an additional period of time for reporting **claim(s)**. The **extended reporting period** starts on the **policy termination date** and ends at the **extended reporting period** expiration date.

**First inception date** means the inception date of the first Miscellaneous Professional Liability **policy** issued by **us** to the **named insured** and continually renewed by **us** until the inception date of this current **policy**.

**Insured** means:

1. The **named insured**; and:

2. If **you** are a sole proprietorship, any past or present employee of **yours**, but only while acting on **your** behalf in their capacity as an employee;

3. If **you** are a partnership, any past or present general or managing partner, principal or employee of **yours**, but only while acting on **your** behalf in such capacity;

4. If **you** are a limited liability company, any past or present managing member, principal or employee of **yours**, but only while acting on **your** behalf in such capacity;

5. If **you** are a corporation, any past or present officer, director, trustee, or employee of **yours**, but only while acting on **your** behalf in such capacity;

6. **Your** temporary or leased employees, but only while acting on **your** behalf as an employee;

7. If **you** are a **subsidiary** of the **named insured**, **you** are only covered while acting on behalf of the **named insured**;

8. **Your** lawful spouse or **domestic partner**, solely for liability arising from any **wrongful act** of an **insured** committed without the participation of such spouse or **domestic partner**;

9. **Your** heirs, assigns and legal representatives in the event of **your** death, incapacity or bankruptcy to the extent that **you** would have been covered; or,

10. An independent contractor for **claims** and **damages under Section A.1, 3, or 4,** but only while acting on **your** behalf  and only if there is a signed agreement executed by the **named insured** and the independent contractor which:

    a) Specifies the services to be performed by the independent contractor on the **named insured's** behalf;

    b) Provides that the services performed by the independent contractor will be under the **named insured's** supervision;

    c) States that the independent contractor will be indemnified by the **named insured** for the services performed on the **named insured's** behalf; and,

    d) Is entered into before the **wrongful act** which leads to a **claim** or **potential claim.**

**Loss** means **claim expenses, damages** and **defense expenses** and does not include **equitable relief**.

**Malicious code** means any virus, trojan horse, worm or similar software program, code or script intentionally designed to insert itself into computer memory.

**Mediation** means the non-binding intervention of a qualified neutral third party chosen by **you** and the other party to a **claim** with agreement by **us**.

**Named insured** means the individual, entity, partnership, or corporation designated as such in the Declarations page.

**Policy** means this **policy** form, the Declarations, and any endorsement to the **policy** issued by **us,** and **your** application, including all supplements.

**Policy period** means the period from the effective date of the **policy** to the expiration date or earlier termination date of the **policy**.

**Policy termination date** means the expiration date of the **policy** as shown on the Declarations page or the cancellation date of the **policy**, whichever is earlier.

**Pollutants** include, but are not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, asbestos, acids, alkalis, chemicals, and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

**Potential claim** means any **wrongful act** or any facts or other circumstances which may subsequently give rise to a **claim.**

**Professional services** means those services described in Item **6.** of the Declarations which **you** perform for others for a fee.

**Property damage** means (1) physical injury to, loss or destruction of, tangible property including the resulting loss of use thereof; or (2) loss of use of tangible property which has not been physically injured or destroyed.

**Retroactive date(s)** refer to the dates shown in Item **5.** of the Declarations. If no date is shown on the Declarations page the retroactive date will be inception date of the policy.

**Subsidiary** means any corporation:

1. Identified by **you** in the application for this **policy**, of which the **named insured** owns more than fifty percent (50%) of the issued and outstanding voting stock either directly or indirectly on the inception date of the **policy period;** or

2. Which becomes a **subsidiary** during the **policy period** provided that such corporation does not represent more than a ten percent (10%) increase in the total assets or gross revenue of the **named insured** as of the date of the acquisition. Where such corporation represents an increase in the total assets or gross revenue of the **named insured** of more than ten percent (10%), such corporation shall be deemed a **subsidiary** under the **policy**, but only upon the condition that within ninety (90) days of its becoming a **subsidiary, you** shall have provided **us** with full particulars of the new **subsidiary** and agree to any additional premium and/or amendment of the provisions of this **policy** required by **us** relating to such new **subsidiary**, subject to the review and acceptance by **us** of full and complete underwriting information. Further, coverage as shall be afforded to the new **subsidiary** is conditioned upon the **named insured** paying when due any additional premium required by **us** relating to such new **subsidiary**. A corporation becomes a **subsidiary** when the **named insured** owns more than fifty percent (50%) of the issued and outstanding voting stock either directly or indirectly, and ceases to be a **subsidiary** at such time when the **named insured** ceases to own more than fifty percent (50%) of the issued and outstanding voting stock.

**Suit** means a civil proceeding for monetary, non-monetary or injunctive relief, which is commenced by service of a complaint or similar pleading. **Suit** includes a binding arbitration proceeding in which **damages** are alleged and to which **you** must submit or do submit with **our** consent.

**Unauthorized access** means the use of or access to **computer systems** by a person not authorized to do so by the **Named Insured**; or the use or access to **computer systems** in a manner not authorized by the **named insured.**

**Wrongful act** and **wrongful acts** means any actual or alleged negligent act, error, omission, or misstatement committed in **your professional services.**

### E. EXCLUSIONS - WHAT THIS POLICY DOES NOT INSURE

This **policy** does not apply to **claim(s)**

1. Cased upon, arising out of, or in any way relating directly or indirectly to any **insured**:

    a) Committing any intentional, dishonest or fraudulent act or omission; or

    b) Gaining any profit, remuneration or advantage to which such **insured** was not legally entitled,

    provided that this exclusion will not apply until a final adjudication establishes a) or b) above;

2. For any willful or criminal violation of any statute, rule or law;

3. For the return, restitution or reduction of professional fees or arising from any demand for **equitable relief;**

4. Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time;

5. Arising out of **acts of terrorism**;

6. Arising out of **bodily injury** or **property damage**;

7. Arising out of:

    a) Any purchase, sale, or offer or solicitation of an offer to purchase or sell securities;

    b) Any violation of any securities law, including the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or any regulation promulgated under the foregoing statutes, or any federal, state or local laws similar to the foregoing statutes (including "Blue Sky" laws), whether such law is statutory, regulatory or common law; or

    c) Any violation of the Organized Crime Control Act of 1970 (commonly known as Racketeer Influenced And Corrupt Organizations Act, or "RICO"), as amended, or any regulation promulgated thereunder or any federal, state or local law similar to the foregoing, whether such law is statutory, regulatory or common law;

8. Arising out of any breach of fiduciary duty, responsibility, or obligation in connection with any employee benefit or pension plan, including violations of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, or similar statutory or common law of the United States of America or any state or jurisdiction therein;

9. Arising out of any **employment practices** liability or any discrimination on any basis, including, but not limited to: race, creed, color, religion, ethnic background, national origin, age, handicap, disability, gender, sexual orientation or pregnancy;

10. Arising out of any misappropriation or misuse of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right;

11. Arising out of false advertising, misrepresentation in advertising, antitrust, unfair competition, restraint of trade, unfair or deceptive business practices, including but not limited to, violations of any local, state or federal consumer protection laws;

12. Against **you** that are brought by or on behalf of any federal, state or local government agency or professional or trade licensing organizations; however, this exclusion shall not apply where the **claim** is alleging a **wrongful act** in **your** rendering **professional services** to such entity or for a **disciplinary proceeding**;

13. Arising out of liability **you** assume under any contract or agreement; however, this exclusion does not apply to liability **you** would have in the absence of such contract or agreement;

14. Against **you** that are brought by or on behalf of:

    a) Any business entity that is owned, managed or operated, directly or indirectly, in whole or in part, by **you**;

    b) Any parent company, subsidiary, successor or assignee of **yours**, or anyone affiliated with **you** or such business entity through common majority ownership or control; or

    c) Any independent contractor supplying material or services to **you**;

15. Arising out of disputes involving:

    a) **Your** fees or charges, including over-charges, or cost over-runs;

    b) Collecting **your** fees from third parties;

    c) The return of fees or other compensation paid to **you**; or

    d) **Your** cost of correcting or re-performing or completing any **professional services**;

16. Arising out of **your** advising, requiring, obtaining or failing to advise, require or obtain any bond, suretyship or other form of insurance;

17. Arising out of or resulting, directly or indirectly, from any actual or alleged commingling, misappropriation or improper use of funds or monies; or

18. Arising out of a **claim** by any **insured** under this **policy** against any other insured under this **policy**.

F. **EXTENDED REPORTING PERIOD**

1. **You** will be entitled to an automatic **extended reporting period** for no additional premium. This extension is applicable to any **claim** made against **you** during the **policy period** and reported to **us** in writing, during the sixty (60) days immediately following the **policy termination date**.

2. **We** will provide an optional **extended reporting period** as described below:

a) If this **policy** is canceled, terminated or nonrenewed, **you** shall have the right, upon payment of an additional premium, to an extension of the reporting period for any **claim** against **you** first made and reported after the date upon which the **policy period** ends, but only with respect to **wrongful acts** committed prior to the end of the **policy period** and otherwise covered by this **policy**. Such period shall be referred to as the optional **extended reporting period**.

   1) The available optional **extended reporting periods** and additional premium are determined in accordance with the rules, rates and rating plans **we** then have in effect in **your** state.

   2) **You** must request the optional **extended reporting period** in writing and must pay **us** the additional premium within 30 days following the date of such cancellation, termination or nonrenewal. If **we** do not receive **your** request and premium payment within 30 days following the date of such cancellation, termination or nonrenewal, **your** right to purchase the optional **extended reporting period** shall cease.

   3) If **we** cancel for non-payment of premium, **you** may purchase the optional **extended reporting period** only after any earned premium due **us** is paid within 10 days after the date of cancellation or **policy** expiration, whichever comes first.

b) All premiums paid for an optional **extended reporting period** shall be deemed fully earned as of the first day of the optional **extended reporting period**. The optional **extended reporting period** may not be canceled.

c) The optional **extended reporting period** shall not increase any limits of liability stated in Item **3.** of the Declarations page. For the purpose of **policy** limits, the reporting periods are part of, not in addition to, the **policy period**.

## G. DUTIES IN THE EVENT OF CLAIM(S) OR POTENTIAL CLAIM(S)

1. If **you** receive a **claim**, **you** and any other involved **insured(s)** must see to it that **we** receive written notice of the **claim**, with full details including the date received, as soon as practicable, but in no event later than 90 days after such **claim** is first made.

2. **You** and any other involved **insured** must:

   a) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **claim**;

   b) Authorize **us** to obtain records and other information;

   c) Cooperate with **us** in the investigation, defense or settlement of the **claim**; and

   d) Assist **us**, upon our request, in the enforcement of any right against any person or entity which may be liable to **you** because of damages to which this insurance may apply.

3. No **insured** will, except at that **insured's** own cost, voluntarily make a payment, assume any obligation, agree to a settlement or incur any expense related to a **claim** without **our** consent.

4. If, during the policy period, **you** become aware of a **wrongful act** or any facts or other circumstance that occurred on or after the retroactive date but prior to the end of the **policy period** which may reasonably be expected to subsequently give rise to a claim against **you**, **you** must give **us** written notice as soon as practicable, but in any event not later than the end of the **policy period** or any **extended reporting period**, if applicable. To the extent possible notice should include:

   a) Where the **wrongful act** took place and any facts or circumstance concerning the wrongful act; and

   b) The names and addresses of any persons and entities involved.

5. Any **claim** arising out of the **wrongful act**, facts or circumstance which is subsequently made against **you** shall be deemed to have been first made at the time **we** received such written notice from **you**, if **we** receive proper notice of the **potential claim** according to paragraph **4.** above.

   The date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

## H. CONDITIONS

1. **CANCELLATION AND NON RENEWAL**

   a) **We** may not cancel this **policy** except for failure to pay premium when due, in which case we will give 10 days written notice to the **named insured** before such cancellation is effective.

b) The **named insured** may cancel this **policy** for itself and all other **insureds** by written notice to **us** stating when thereafter the cancellation shall be effective. If this policy is cancelled, earned premium shall be computed in accordance with the customary short rate proportion of the premium.

c) **We** are not required to renew this **policy**. However, written notice of **our** intent to nonrenew this **policy** shall be sent to the **named insured** at least 60 days prior to expiration of the **policy period**.

## 2. REPRESENTATIONS AND APPLICATION

By accepting this **policy you** agree that:

a) The statements in the Declarations are accurate and complete;

b) Those statements are based on representations **you** made in **your** application for this insurance **policy**;

c) The representations made in **your** application are the basis of this **policy** and are to be considered as incorporated into and constituting a part of this **policy**;

d) Those representations are material to the acceptance of the risk **we** assumed under this **policy**;

e) **We** have issued this **policy** in reliance upon the truth, accuracy and completeness of such representations;

f) The application shall be interpreted as a separate application for coverage by each **insured.** No statement in the application, fact pertaining to or knowledge possessed by any **insured** shall be imputed to any other **insured** for the purpose of determining if coverage is available; and

g) Statements in the application, facts pertaining to or knowledge possessed by the individual signing the application shall be imputed to the **named insured.**

## 3. LEGAL ACTION AGAINST US

No person or entity has a right under this **policy**:

a) To join **us** as a party or otherwise bring **us** into a suit asking for **damages** from an **insured**; or

b) To sue **us** on this **policy** unless all of its terms have been fully complied with.

A person or entity may sue **us** to recover on an agreed settlement or on a final judgment against an **insured**; but we will not be liable for **damages** that are not payable under the terms of this **policy** or that are in excess of the applicable limit of liability. An agreed settlement means a settlement and release of liability signed by us, the **insured** and the claimant or the claimant's legal representative.

## 4. CHANGE IN OWNERSHIP, CONTROL OR EXPOSURE

a) If during the **policy period**:

1) Another person or entity or group of persons or entities acquires more than 50 percent of the assets of the **named insured**; or

2) Another person or entity, or group of persons or entities, acquires an amount of the outstanding securities representing more than 50 percent of the voting power for the election of the **named insured's** directors or trustees; or

3) The **named insured** consolidates with or merges with another entity,

**you** shall notify **us** of the change described in **1., 2.,** or **3.** above, herein referred to as a **transaction,** as soon as practicable, but not later than 30 days after the effective date of the **transaction** and provide such additional information as **we** require.

b) If a **transaction** occurs, coverage under this **policy** shall continue until termination of the **policy period**, but only with respect to **claims** and **potential claims** made for **wrongful acts** which took place prior to the **transaction**.

c) If **you** fail to provide notice as described in **4.a.** above, coverage provided to **you** under this **policy** shall terminate as of the date of the **transaction**.

d) The entire premium for this **policy** shall be deemed fully earned upon the occurrence of a **transaction.**

e) In the event of a **transaction**, the **named insured** will have the right, upon payment of an additional 75 percent of the premium, to an extension of coverage under the **policy** for **claim(s)** first made and reported during the 12 months after the **transaction,** but only with respect to any **wrongful act**

occurring prior to the **transaction** and otherwise covered by this **policy**. This 12-month period shall be referred to as the run-off period.

   **1)** "The premium" means the premium in effect immediately prior to the **transaction**.

   **2)** The rights contained in paragraph **4.** shall terminate unless written notice of the election and the additional premium due are received by **us** within 60 days of the **transaction**.

**f)** In the event of a **transaction**, the **named insured** has the right to purchase the run-off period, but has no right to purchase the optional **extended reporting period** described in **SECTION F.** of the **policy**.

**g)** The additional premium for the run-off period shall be fully earned at the inception of the run-off period. The run-off period is not cancellable.

**h)** The limit of liability for the run-off period is part of and not in addition to the limit of liability shown in Item **3.** of the Declarations page.

### 5. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If **you** have rights to recover all or part of any payment **we** have made under this **policy**, these rights are transferred to **us**. **You** must do nothing after a **loss** to impair our rights to seek or obtain recovery from others. At **our** request, **you** will sue those responsible or transfer those rights to **us** and help **us** enforce them. In the event of any payment under this **policy**, we shall be subrogated to the extent of such payment to all of **your** rights of recovery. **You** shall execute and deliver such instruments and papers and do whatever else is necessary to secure such rights and shall do nothing to prejudice or compromise such rights without **our** express written consent.

### 6. ASSIGNMENT

No change in, modification of or assignment of interest in this **policy** shall be effective except when made by a written endorsement to the **policy**.

### 7. SOLE AGENT FOR THE INSURED

By accepting this **policy**, **you** agree that only the **named insured** is authorized to act on behalf of all **insureds** with respect to the following: consenting to settlement or releasing rights under this **policy**, payment for premiums and deductibles, receiving return premiums, giving or receiving notice of cancellation or nonrenewal, requesting any optional **extended reporting period** or run-off period and agreeing to any changes in this insurance **policy**. Each **insured** agrees that the **named insured** shall act on its or their behalf with respect to such matters.

### 8. COVERAGE TERRITORY AND VALUATION

**a)** This **policy** applies to a **wrongful act** committed anywhere in the world, provided that the **claim** is made and suit is brought against the **insured** within the United States, its territories or possessions or Canada.

**b)** All premiums, limits, deductibles, **loss** and other amounts are expressed and payable in the currency of the United States of America. If a judgment is rendered, a settlement is denominated or another element of **loss** under this **policy** is stated in a currency other than the United States of America dollars, payment under this **policy** shall be made in United States of America dollar equivalent determined by the rate of exchange published in the *Wall Street Journal* on the date the judgment becomes final, the amount of the settlement is agreed upon or any element of **loss** is due, respectively.

### 9. OTHER INSURANCE

**a)** If other valid and collectible insurance is available to **you** for **loss** covered under this **policy**, the insurance provided by this **policy** shall be excess over such other insurance, regardless of whether or not such insurance is primary, contributory, excess, contingent or otherwise.

**b)** When this insurance is excess **we** have no duty to defend **you** against any **claim** if any other insurer has a duty to defend **you** against the **claim**. If no other insurer defends **we** will undertake to do so but **we** will be entitled to **your** rights against those other insurers.

**c)** When this insurance is excess over other insurance **we** will pay only our share of the amount of **loss**, if any, that exceeds the sum of:

   **1)** The total amount that all such other insurance would pay for the **loss** in the absence of this insurance;

**2)** The total of all deductibles, self-insurance and retentions under all that other insurance.

We will share the remaining **loss**, if any, with any other insurance that is not described in this provision and was not bought specifically to apply in excess of the limit of liability shown in the Declarations page of this **policy**.

**d) Method of Sharing**

If all the other insurance permits contribution by equal shares, **we** will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of liability or none of the **loss** remains, whichever comes first.

If any other insurance does not permit contribution by equal shares, **we** will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of liability to the total applicable limits of liability of all insurers.

## 10. TWO OR MORE POLICIES, COVERAGE PARTS, OR ENDORSEMENTS ISSUED BY US

It is **our** stated intention that this **policy** and any other **policy**, coverage part or endorsement issued by **us**, or by another member of the **company**, shall not provide duplication or overlap of coverage for the same **claim**. If this **policy** and any other **policy** issued by **us**, or by another member of the **company**, to **you**, apply to the same **claim** then, **Condition 9. Other Insurance** notwithstanding:

**a) We** shall not be liable under this **policy** for a greater proportion of the **loss** than the applicable limit of liability of this **policy** bears to the sum of the total limits of liability of all such policies; and

**b)** The maximum amount payable under all such policies combined shall not exceed the highest applicable limit of liability under any one **policy**.

## 11. ALLOCATION

If **you** incur both **loss** covered by this **policy** and **loss** not covered by this **policy** on account of any **claim** because such **claim** includes both covered and non-covered matters, coverage with respect to such **claim** shall apply as follows:

**a)** 100 percent of **defense expenses** on account of the **claim** will be considered covered **loss**; and

**b) We** shall fairly allocate all remaining **loss** that you incurred on account of such **claim** between covered **loss** and non-covered **loss**.

## 12. SEPARATION OF INSUREDS

Except with respect to the limits of liability, deductible and any rights or obligations assigned to the first **named insured**, this insurance applies:

**a)** As if each **insured** were the only **insured**; and

**b)** Separately to each **insured** against whom a **claim** is made.

## 13. CONFORMANCE TO STATUTE

The terms of this **policy** which are in conflict with the statutes of the state in which this **policy** is issued are amended to conform to those statutes.

## 14. SECTION TITLES

The titling of sections and paragraphs within this **policy** is for convenience only and shall not be interpreted as a term or condition of this **policy**.

## 15. BANKRUPTCY

**You** or **your** estate's bankruptcy or insolvency does not relieve **us** of **our** obligations under this **policy.**

## 16. LIBERALIZATION

If **we** adopt any revisions to the terms and conditions of this **policy** form to provide more coverage without an additional premium charge during the **policy** term, the broadened coverage will immediately apply. However, the broadened terms and conditions will not apply to any **claims** that were first made against **you** prior to the effective date of the revision.

# CONSENT TO SETTLE AMENDMENT
# ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Named Insured: PAT DAVIS INC

Policy Number: LHD A256124 02

Issued by The Hanover Insurance Company.

This endorsement, Effective 12:01 A.M. 03/26/2016 modifies the following:

**SECTION B. – DEFENSE AND SETTLEMENT (INCLUDED IN THE LIMIT),** third Paragraph, is replaced with the following:

**We** will not settle a **claim** without the consent of the **named insured**. **If** the **named insured** refuses to consent to a settlement of any claim **we** recommend and which a claimant would accept, subject to the applicable limit of liability and deductible then **our** liability for the **claim** is limited to:

**1.** What **we** would have contributed to the settlement **if you** had consented to the settlement, including **claim expenses** incurred up to the date of such refusal; and

**2.** Seventy percent of such **damages** in excess of the amount for which the **claim** could have been settled.

After the time of the **named insured's** refusal, the **named insured** shall be responsible for all **loss** in excess of the amount for which the **claim** could have been settled, the percentage of **damages** noted above in 2., and all **claims expenses**, incurred thereafter. For the purpose of this section, settlement includes but is not limited to any resolution of a **claim** that would have occurred as a result of any court-ordered process which the **named insured** chose not to accept.

All other terms and conditions remain unchanged.

# PROPERTY MANAGEMENT ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Named Insured:  PAT DAVIS INC
Policy Number:  LHD A256124 02

Issued by The Hanover Insurance Company.

This endorsement, Effective 12:01 A.M.  03/26/2016  modifies the following:

**A.   SECTION A – COVERAGE – WHAT THIS POLICY INSURES**, Paragraph **3.** is replaced by the following:

   **3.** Personal Injury Coverage

   **We** will pay on **your** behalf those sums which **you** become legally obligated to pay as **damages** and **claim expenses** because of any **claim** made against **you** and reported to **us** in writing during the **policy period**, or any **extended reporting period**, if applicable, that arise from **your professional services** and are for:

   **a.**   **Your** defamation, libel, slander, product disparagement, trade libel, infliction of emotional distress or other tort related to disparagement or harm to the reputation or character of any person or entity;

   **b.**   **Your** invasion or interference with the right to privacy or publicity, including but not limited false light, public disclosure of private facts, intrusion, and invasion; or

   **c.**   **Your** causing a third party to be subject to wrongful eviction, false arrest, detention, or imprisonment.

**B.** The following is added to **SECTION** E **– EXCLUSIONS – WHAT THIS POLICY DOES NOT INSURE**:

   This **policy** does not apply to **claim(s)**:

   Based upon, arising out of, or in any way relating to, directly or indirectly:

   **a)**   Any promoting of, syndication of, offering or selling of any interest in any limited partnership;

   **b)**   Any services as a property developer, builder, construction manager, loss control inspector, risk manager, safety inspector, insurance agent, insurance broker, mortgage banker, mortgage broker, escrow agent, real estate appraiser, title abstractor, and/or title agent;

   **c)**   Any formation, growth, presence, release, dispersal, containment, removal, testing, for or detection or monitoring of, or failure to detect or monitor or warn about any molds, fungi, spores, or other similar growth or organic matter, including but not limited to Aspergillus, Pencillium or any strain or type of Stachybotrys, or toxic black molds;

**C.   SECTION E – EXCLUSIONS**, Paragraphs **6.** and **16.** are replaced by the following:

   **6.**   For any **bodily injury** or **property damage**; however, this exclusion shall not apply to any **claim** arising out of a **wrongful act** committed by an **insured** in the rendering of **professional services** as specified in Item **6.** of the Declarations;

   **16.** Any failure to effect or maintain, in the whole or part, any policy of insurance or reinsurance, any bond, or any decision or advise regarding the type or amount of insurance, reinsurance, or bond to purchase or perils to cover.

   This exclusion shall not apply in the event the **insured** uses and consults with a properly licensed insurance agent for the insurance needs on all properties the **insured** is responsible for procuring and maintaining insurance. It is further understood that this **policy** shall not apply to the intentional failure to effect or renew any insurance.

All other terms and conditions remain unchanged.

# TEXAS MISCELLANEOUS PROFESSIONAL LIABILITY AMENDATORY ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Issued by The Hanover Insurance Company.

This endorsement modifies the following:

A. **SECTION A – COVERAGE – WHAT THIS POLICY INSURES,** Paragraph **2. Disciplinary Proceedings Coverage** is replaced by the following:

Disciplinary Proceedings Coverage

**We** will pay on **your** behalf only **defense expenses** incurred in responding to a **disciplinary proceeding** commenced against **you** and reported to **us** in writing during the **policy period**, or which was commenced during the **policy period** and, if exercised, reported to **us** in writing during any available **extended reporting period**. The maximum amount available for **defense expenses** for a **disciplinary proceeding** is $25,000 for each **policy period**, regardless of the number of **disciplinary proceedings**. Any payment made hereunder shall not be subject to the deductible and shall not reduce any applicable Limit of Liability. Inclusive within this coverage, **we** will pay up to $250 per day for any salaries and expenses of **your** employees required to attend or participate in any **disciplinary proceeding. We** shall not pay any **damages** incurred as a result of **disciplinary proceedings.**

B. **SECTION C – LIMIT OF LIABILITY AND DEDUCTIBLE** is amended to add the following

    **4. ACTS OF TERRORISM**:

        The most **we** will pay under this **policy** for both **damages** and **claim expenses** resulting from **acts of terrorism** is $250,000 per occurrence, or an amount equal to the each **claim** limit shown in the Declarations, and $250,000 aggregate, or an amount equal to the aggregate limit shown in the Declarations, whichever is less.

C. Under **SECTION D – DEFINITIONS,** the definition of **Acts of Terrorism** is replaced by the following:

**Acts of Terrorism** means activities against persons, organizations or property of any nature:

    **1.** That involve the following, or preparation for the following:

        **a)** Use or threat of an act that interferes with or disrupts electronic, communication, information, or

        Use or threat of force or violence; or

        **b)** Commission or threat or a dangerous act; or

        **c)** Commission or threat of an act that interferes with or disrupts electronic, communication or mechanical systems; and

    **2.** When one or both of the following apply:

        **a)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

        **b)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or to express opposition to) a philosophy or ideology.

D. **SECTION D – DEFINITIONS** is amended to add the following:

**Certified Acts of Terrorism** means any act that is certified by the Secretary in accordance with the provisions of the federal Terrorism Risk Insurance Act:

    **1.** To be an act of terrorism;

    **2.** To be a violent act or an act that is dangerous to:

        **a)** Human life;

        **b)** Property; or

        **c)** Infrastructure;

    **3.** To have resulted in damage within the United States, or outside of the United States in the case of:

      **a)** An air carrier (as defined in section 40102 of title 49, United States Code),  a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States); or

      **b)** The premises of a United States mission; and

    **4.** To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**E.** **SECTION E – EXCLUSIONS,** Paragraph **5.** is replaced by the following:

    **5.** Arising out of **acts of terrorism** if:

      **a)** The **acts of terrorism** result in industry-wide insured losses that exceed $25,000,000 for related incidents that occur within a 72 hour period; or

      **b)** Fifty or more persons sustain death or serious physical injury.

    However, this exclusion for **acts of terrorism** is not subject to the above limitations if:

      **c)** The **act of terrorism** involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination;

      **d)** The **act of terrorism** is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

      **e)** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the **act of terrorism** was to release such materials.

**F.** **SECTION F – EXTENDED REPORTING PERIOD,** Paragraph **2.a)1)** is replaced by the following:

    **1)** The available optional **extended reporting periods** and additional premium are determined in accordance with the rules, rates and rating plans **we** then have in effect in your state. The minimum length of the optional **extended reporting period** will be one year.

**G.** **SECTION H – CONDITIONS,** Paragraph **1.c)** is replaced by the following:

    **c)** **We** are not required to renew this **policy**. However, written notice of **our** intent to nonrenew this **policy** shall be sent to the **named insured** at least 60 days prior to expiration of the **policy period**. If the notice is delivered or mailed later than the 60th day before the expiration date, the coverage will remain in effect until the 61st day after the date on which the notice is delivered or mailed. Earned premium for any period of coverage that extends beyond the expiration date of the **policy** will be computed pro rata based on the previous year's rate. The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

**H.** The following is added to **SECTION H – CONDITIONS,** Paragraph **1. Cancellation and Non Renewal**:

    **d)** Notices of cancellation or nonrenewal shall be sent by first class mail to the last address known to **us**, along with a statement of the specific reasons for cancellation or nonrenewal.

    **e)** **We** will not cancel or refuse to renew this **policy** based solely on the fact that the **insured** is an elected official.

**I.** **SECTION H – CONDITIONS,** Paragraph **2.d)** of **Representations and Application** is replaced by the following:

    **d)** Any misrepresentations shall not be considered grounds for rescission of the **policy** or affect **our** obligations under this **policy** unless the **insured** knew or should have reasonably known that the representation was false and if it is shown at trial that:

      **1)** The misrepresentation was material to the risk; or

      **2)** The fact misrepresented contributed to the contingency or event on which the policy became due and payable.

**J.** **SECTION H – CONDITIONS,** Paragraphs **4.c)** and **d)** of **Change in Ownership, Control or Exposure** are deleted.

**K.** **SECTION H – CONDITIONS,** Paragraph **10. Two or More Policies, Coverage Parts, or Endorsements Issued by Us** is replaced by the following.

If two or more policies or coverage parts **we** issue apply to the same **claim** or **claims,** there shall not be any duplicate or overlapping coverage for the same **claim** by those policies or coverage parts. In that event, **we** will coordinate limits in proportion to the total limits available under the terms of the policies or coverage parts.

All other terms and conditions remain unchanged.



The
## Hanover
Insurance Group™

## NOTICE TO POLICYHOLDERS:
## MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE

### INFORMATION REGARDING EXTENDED
### REPORTING PERIOD ENDORSEMENT
### ("ERP COVERAGE")

The enclosed policy provides coverage for claims reported during the policy period. Subject to the policy's terms and conditions, you may purchase an Extended Reporting Period Endorsement, also known as "ERP coverage", that will extend the time for reporting claims arising out of professional services rendered while the policy was still in effect, although the policy may have been cancelled, nonrenewed, or terminated.  Please refer to Section F. of your policy for the terms and conditions for eligibility, purchasing or obtaining an Extended Reporting Period endorsement. *There is a limited time for requesting such an endorsement.*

The premium charged for the endorsement is expressed as a percentage of your policy's annual premium.

| Length of "ERP Coverage" Offered | "ERP Coverage" Premium |
|---|---|
| 12 months | 100 % of expiring annual premium |
| 24 months | 150 % of expiring annual premium |
| 36 months | 200 % of expiring annual premium |

*\*Extended Reporting Period Endorsements may be subject to state regulatory requirements.*

Please contact your agent or customer service representative for pricing specific to your situation and location.

## ENVIRONMENTAL HAZARDS ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Named Insured:  PAT DAVIS INC
Policy Number:  LHD A256124 02

Issued by The Hanover Insurance Company.

This endorsement, Effective 12:01 A.M.  03/26/2016  modifies the following:

**SECTION E – EXCLUSIONS,** Paragraph **4.** is replaced by the following:

**4.** Arising out of:

   **a)** The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time;

   **b)** Any directive, request or voluntary decision that any Insured monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants; or

   **c)** Any governmental or regulatory directive to request to test for, monitor, clean up, remove, contain,  treat, detoxify or neutralize pollutants; or

   **d)** The failure to discover, disclose, report or advise of the existence or amount of  **pollutants**.

   However,  **we** will  pay  on  **your** behalf  **damages** and **claim expenses** incurred in the responding to a claim made against **you** and reported to **us** in writing during the **policy period,** or **extended reporting period,** if  applicable,  that  arise from  the failure to disclose, report, or advise of the existence of **pollutants**.

Notwithstanding anything to the contrary in the **policy**, including any endorsements thereto:

   **Our** aggregate Limit of Liability for **damages** and **claim expenses** for  all  environmental hazard  **claims** covered  under  this  endorsement is  $1,000,000  (or  the applicable  ag gregate Limit of Liability, set forth in Item **3. b.** of the Declarations,  whichever is less) which amount will be included within, and not in addition to, the aggregate Limit of Liability set forth in  **Item 3. b.** of the Declarations.

All other terms and conditions remain unchanged.


**The**
# Hanover
Insurance Group®

## POLICYHOLDER NOTICE

## TEXAS IMPORTANT NOTICE

To obtain information or make a complaint:

You may call The Hanover Insurance Company's toll-free telephone number for information or to make a complaint:

**800-922-8427**

You may also write to The Hanover Insurance Company at:

The Hanover Insurance Company
5910 North Central Expressway
Suite 300
Dallas, TX 75206

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write to the Texas Department of Insurance at:

Texas Department of Insurance
PO Box 149104
Austin, TX 78714-9104
Fax: (512) 490-1007

E-mail: ConsumerProtection@tdi.texas.gov
Web: www.tdi.texas.gov

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim, you should contact your agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part or condition of the attached document.

## TEXAS AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis de The Hanover Insurance Company's para informacion o para someter una queja al:

**800-922-8427**

Usted tambien puede escribir a The Hanover Insurance Company:

The Hanover Insurance Company
5910 North Central Expressway
Suite 300
Dallas, TX 75206

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

**1-800-252-3439**

Puede escribir al Departamento de Seguros de Texas:

Texas Department of Insurance
PO Box 149104
Austin, TX 78714-9104
Fax: (512) 490-1007

E-mail: ConsumerProtection@tdi.texas.gov
Web: www.tdi.texas.gov

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:**
Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

# REAL ESTATE PROFESSIONAL SERVICES ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Named Insured: PAT DAVIS INC                         Policy Number: LHD A256124 02

Issued by The Hanover Insurance Company.

This endorsement, Effective 12:01 A.M. 03/26/2016 modifies the following:

A. **SECTION A – COVERAGE**, Paragraph **3.** is deleted and replaced by:

   **3.** Personal Injury Coverage

   **We** will pay on **your** behalf those sums which **you** become legally obligated to pay as **damages** and **claim expenses** because of any **claim** made against **you** and reported to **us** in writing during the **policy period**, or any **extended reporting period**, if applicable, that arise from **your professional services** and are for:

   **a.** **Your** defamation, libel, slander, product disparagement, trade libel, infliction of emotional distress or other tort related to disparagement or harm to the reputation or character of any person or entity;

   **b.** **Your** invasion or interference with the right to privacy or publicity, including but not limited to false light, public disclosure of private facts, intrusion, and invasion; or

   **c.** **Your** causing a third party to be subject to wrongful eviction, false arrest, detention or imprisonment.

B. **SECTION C – LIMIT OF LIABILITY AND DEDUCTIBLE**, Paragraph **2.** is deleted and replaced by:

   **2. DEDUCTIBLE**

   **a.** **You** will pay the deductible amount shown in the Declarations. The deductible applies to each **claim**. **We** will not be required to make any payment for **claim expenses**, settlements reached, or judgments rendered in an otherwise covered **claim** unless and until **you** have paid the deductible in full. **You** must pay the deductible (i) immediately when invoiced or, (ii) in the event that offers of judgment or settlement demands are made which **you** and **we** agree should be accepted, prior to the expiration of the time period for responding to such offers or demands.

   **b.** All **claim expenses** will first be subtracted from the limit of liability, with the remainder, if any, being the amount available to pay for **damages** after **you** have paid the deductible in paragraph **a.**

   **c.** If **you** and **we** agree to use mediation and a **claim** is resolved by mediation prior to, or within 180 days of the **claim**, the institution of arbitration proceedings or service of suit, the deductible amount applying to such **claim** will be reduced by 50% or $5,000, whichever is less;

   **d.** The **insured's** obligation to pay the deductible amount stated in Item **4.** of the Declarations shall be waived, in an amount not to exceed $2,500, if the following conditions are met and evidence of such is provided to the **company** when notice of a **claim** is received by the **company**:

   **1)** A seller disclosure form was signed by the seller and acknowledged by the buyer prior to closing, except in circumstances where the disclosure form is not applicable, such as the sale of estate and/or trust properties and new home construction;

   **2)** A home warranty was purchased or waived in writing by the buyer prior to or at closing (for new homes the warranty provided by the builder is acceptable);

   **3)** A written home inspection report is issued by a licensed or certified home inspector or waived in writing by the buyer prior to closing; and

   **4)** A state or local board approved standard sales contract or a sales contract drafted by a licensed attorney was utilized.

C. **SECTION D – DEFINITIONS**, the definition of **Professional services** is deleted and replaced by:

   **Professional services** means those services described in Item **6.** of the Declarations page which **you** perform for others including advice given or services performed by an **insured** for others as a **real estate agent**, but solely when such services are performed on behalf of an **insured** as a **real estate agency**, and provided that the **insured** is appropriately licensed by the state in which the **insured** is doing business.

**910-0716 01 15**                                                         **Page 1 of 3**

**D.** The following is added to **SECTION D – DEFINITIONS**:

**Guaranteed sale listing contract** means a written agreement between the **insured** and the seller of real property, in which the **insured** agrees to purchase such property if it is not sold under the listing agreement in the time frame specified by the agreement.

**Property manager** means any person or entity who manages real property, including leasing space, collecting rents, selecting tenants, and arranging for repair, renovation or maintenance by others of buildings or grounds, including services related to Real Estate Owned (REO) properties, foreclosures, or short sales.

**Real estate agency** means an entity doing business for compensation in the selling, leasing or marketing of commercial or residential real estate, including **property manager, short term escrow agent** or notary public services.

**Real estate agent** means an **insured** doing business as an agent, broker, referral agent, real estate consultant or counselor in the sale or leasing of commercial or residential real estate, including **short term escrow agent** or notary public services.

**Short term escrow agent** means an **insured** who, in connection with the sale or purchase of real property, receives or holds funds in, or distributes funds from, an escrow or trust account where all such funds are to be fully distributed within twelve (12) months from the date received.

**E.** The following is added to **SECTION E – EXCLUSIONS – WHAT THIS POLICY DOES NOT INSURE**:

This **policy** does not apply to **claim(s)**:

Based upon or arising out of:

**a)** Any conversion or improper use of funds or property;

**b)** The **insured's** inability or refusal to pay or collect premium, or tax monies;

**c)** Any promises, warranties, representations, or guarantees made by the **insured** as to the current and/or future value of any property;

**d)** Any services as a property developer, builder, construction manager, loss control inspector, risk manager, safety inspector, insurance agent, insurance broker, mortgage banker, mortgage broker, real estate appraiser, title abstractor, and/or title agent;

**e)** Any failure to effect or maintain, in the whole or in part, any policy of insurance or reinsurance, any bond, or any decision or advise regarding the type or amount of insurance, reinsurance, or bond to purchase or perils to cover. However this exclusion shall not apply in the event the **insured** uses and consults with a properly licensed and insured Insurance Agent for the insurance needs on all properties the **insured** is responsible for procuring and maintaining insurance. It is further understood that this **policy** shall not apply to the intentional failure to effect or renew any insurance;

**f)** The formation, syndication, operations or administration of any property syndication, or real estate investment trust to any other form of corporation, general or limited partnership or joint venture formed for the purpose of investing in, selling or maintaining real property including those syndications, trusts, corporations, partnerships or joint ventures in which the **insured** has, had or intended to have a participating interest directly or indirectly in the profits or losses thereof;

**g)** Any actual or attempted sale, purchase, leasing, appraisal, or property management of real property or raw land owned, developed, or constructed by:

    **1)** Any **insured**;

    **2)** Any entity in which the **insured** had a financial or a contemplated financial interest;

    **3)** Any entity with a financial interest or contemplated financial interest in the **named insured**; or

    **4)** Any entity under the same financial control as the **named insured**.

    However, this exclusion does not apply to any **claim** based upon or arising out of:

        **(a)** Services as **property manager**, the purchase of real property, or the sale or purchase of raw land;

        **(b)** The actual or attempted sale or leasing of real property in which the combined ownership interest of all **insureds** was less than 20% at the time of the sale or lease;

     **(c)** The actual or attempted sale of residential real property, consisting of a 1–4 family dwelling, owned by the **insured** when all of the following conditions are met in connection with such sale:

          **(1)** A seller disclosure form was signed by the **insured** and acknowledged in writing by the buyer prior to closing;

          **(2)** A home warranty was purchased or waived in writing by the buyer prior to closing;

          **(3)** A written home inspection report was issued by a licensed or certified home inspector, or was waived in writing by the buyer prior to closing; and

          **(4)** A state or local board approved standard sales contract was utilized;

     **(d)** The actual or attempted sale of real property owned by the **insured** if the property was acquired by the **insured** under a **guaranteed sale listing contract**, and from acquisition to resale the title is held by the **insured** for twelve (12) months or less, and continually offered for sale by the **insured**;

     **(e)** The actual or attempted sale, leasing, or property management of the **insured's** residential real property by another **insured** who is not the owner of such residential property.

All other terms and conditions remain unchanged.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

**In Witness Whereof,** this company has caused this policy to be signed by its President and Secretary and countersigned on the declarations page, where required, by a duly authorized agent of the company.

Frederick H. Eppinger
President

Charles Frederick Cronin
Secretary



**AMWINS BROKERAGE OF TEXAS**

## CLAIMS OVERVIEW

We strongly believe in the importance and value of effective claim services for our clients. We understand that the timely and proper handling of claims is one of the most critical "moments of truth" for our clients. AmWINS has invested heavily in claim services. From high-end claim expertise to a national claim practice that works together, we look to support our clients when they need us the most.

## CLAIMS CAPABILITIES

Our national practice provides a variety of claim services, including the following:

- **Complex Claims Advocacy** – Complex or difficult claims will often require a higher degree of attention, oversight and advocacy. This effort triggers a team approach between the retailer, AmWINS broker and claims consultant. Our intent here is to set a claims strategy early in the process to ensure the claim is properly handled, communicated and expectations set. Claims are reviewed to ensure that we advocate properly on behalf of the client.

- **Claim Consulting** – We will work closely with our clients to help in the design of a successful claims management program and the ongoing quality of service provided by insurance carriers and TPA's. Our consultants can also get involved when issues around communication, coordination or other relevant areas are somehow interfering with the outcomes of the claims.

- **TPA and IA Selection** – We will work with our clients to help with TPA (Third Party Administrator) and IA (Independent Adjuster) assignments. These selections can often be a critical component of an overall placement and risk management program.

- **Claims Administration** – When requested, we can monitor claims for our clients through a local AmWINS office.

## WORKING TOGETHER TOWARD SUCCESSFUL CLAIM OUTCOMES

The success of a claim outcome typically depends on factors such as good communication, expertise and strong working relationships. Our goal at AmWINS is to be well prepared before a claim occurs and then to be actively engaged with our retail brokers on the more difficult and complex claims. Ideally, we like to work with our clients as early as possible. Whether there is a claim that you think is getting difficult, or an overall program that needs a good claims strategy, we can be much more effective if we are brought in early.

## AMWINS BROKERAGE OF TEXAS CLAIMS TEAM

If you need assistance from AmWINS Brokerage of Texas on a particular claim or account, please direct your question to txclaims@amwins.com or contact:

**Morgan Payne**
214.561.9339
morgan.payne@amwins.com

**David Bailey**
214.561.7039
david.bailey@amwins.com

10/14

# Exhibit B

MULLIN✦HOARD✦BROWN✦LLP



ATTORNEYS AT LAW

Steven L. Hoard
*PARTNER*
Board Certified, Civil Trial Law,
and Business Bankruptcy Law,
Texas Board of Legal Specialization

Email:  shoard@mhba.com
Direct Dial:  (806) 337-1112
Fax:  (806) 372-5086

November 9, 2016

Mr. Andy Tyzenhaus
Senior Specialty Claim Consultant
THE HANOVER INSURANCE GROUP
333 W. Pierce Road, Suite 300
Itasca, IL 60143

*Via email:* atyzenhaus@hanover.com
*and U.S. First Class Mail*

Re:  Hanover Policy No. LHD A256124 02
      Claim No. 15-00785997

Dear Mr. Tyzenhaus:

I represent Pat Davis, one of the insureds under the above-referenced insurance policy. I understand from both Upshaw Insurance Agency, Inc., and from John Ben Blanchard, attorney of record for Jim Austin, that you are the adjuster at the Hanover Insurance Group responsible for handling the claim made by Mr. Austin against my client. Attached to this letter is a copy of the lawsuit recently filed by Mr. Austin against Pat Davis. I have agreed to accept service of the lawsuit on behalf of Mr. Davis, but we do not currently have a formal answer date. I expect the answer will be due within the next two or three weeks.

The attached Plaintiff's Original Petition filed by Mr. Austin speaks for itself, but as you can see the claims against Mr. Davis are based on his alleged negligent hiring and supervision of a bookkeeper and his alleged breach of fiduciary duty. Mr. Davis is not accused of any intentional wrongdoing himself and indeed has not committed any intentional wrongdoing.

I understand from Upshaw and from Mr. Blanchard that you have indicated, at least informally, that you do not believe there is any coverage for the claims asserted by Mr. Austin. I hope that that informal conclusion was based on a misapprehension of the facts that form the basis of the claim and that after you have reviewed the attached petition, you will conclude otherwise.

In any event, I hereby make demand on behalf of Mr. Davis that Hanover both defend and indemnify Mr. Davis under the above-referenced policy with respect to the claims asserted by Mr. Austin in the attached lawsuit. Because we will have to file an answer to the lawsuit

Mr. Andy Tyzenhaus
November 9, 2016
Page 2

shortly, I ask that you get back to me with Hanover's response within five (5) business days from
the date of this letter.

   I look forward to hearing from you.

                                        Respectfully,

                                        Steven L. Hoard

SLH/li
Enclosure
4671\00\1290967

CAUSE NO. 70990C _____

| | | |
|---|---|---|
| **JAMES AUSTIN, III,** | § | **IN THE _____ DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **IN AND FOR** |
| | § | |
| **PAT DAVIS, INC., d/b/a** | § | |
| **PAT DAVIS PROPERTIES,** | § | |
| | § | |
| **Defendant.** | § | **RANDALL COUNTY, TEXAS** |

### PLAINTIFF'S ORIGINAL PETITION

COMES NOW Plaintiff, James Austin, III (hereinafter "**Plaintiff**" or "**Austin**"), filing this Plaintiff's Original Petition against Defendant, Pat Davis, Inc. d/b/a Pat Davis Properties (hereinafter "**Defendant**"), and would show the Court as follows:

### I.
### DISCOVERY CONTROL PLAN

1.     Plaintiff intends to conduct discovery under Level 2 of the Texas Rule of Civil Procedure 190.3 and affirmatively pleads that this suit is not governed by the expedited-actions process in Texas Rule of Civil Procedure 169 because Plaintiff seeks monetary relief over $100,000.

### II.
### CLAIM FOR RELIEF

2.     Plaintiff seeks monetary relief over $200,000 but not more than $1,000,000, interest, and court costs.

### III.
### PARTIES

3.     Plaintiff, James Austin, III, is an individual who resides in Randall County, Texas.

FILED
11/1/2016 10:43:29 AM
Jo Carter, District Clerk
Randall County, Texas
RH_____Deputy

4.      Defendant, Pat Davis, Inc. d/b/a Pat Davis Properties, is a Texas for-profit corporation whose principal place of business is in Randall County, Texas at 4001 S. Western, Amarillo, Texas 79109, may be served with process by serving its president, Pat Davis, at that address. No service is required at this time.

## IV.
## JURISDICTION AND VENUE

5.      The Court has subject-matter jurisdiction over the lawsuit because the amount in controversy exceeds the Court's minimum jurisdictional requirements.

6.      Venue in Randall County, Texas is proper pursuant to Section 15.002(a)(3) of the Texas Civil Practice and Remedies Code because it is the county of the Defendant's principal office.

## V.
## BACKGROUND

7.      Defendant is a full service commercial real estate company specializing in property management, leasing, commercial brokerage, development, and investments.

8.      Defendant represents commercial properties in Amarillo, Texas; Dallas, Texas; and Phoenix, Arizona.

9.      Austin hired Defendant to manage the following properties in which Austin owned an interest: Amarillo Place One Partners, Ltd., 1301 Coulter Properties, LLC, and I-27 RA, Ltd. (hereinafter the "Properties").

10.     Defendant was charged with both the collection of rents and revenues, and the payment of expenses associated with the Properties and it served as trustee in the handling of those funds. In that capacity, Defendant held Plaintiff's money in trust.

11.     In connection with its management of the Properties and fiduciary responsibilities to Plaintiff, Defendant hired a third-party bookkeeper (the "Bookkeeper"). Defendant delegated many of its responsibilities to the Bookkeeper, including the receipt of rent and payment of expenses associated with the individual Properties. To facilitate the payment of expenses, Defendant provided the Bookkeeper with the Defendant's electronic signature associated with the bank accounts that held the money owned by of the properties it was managing.

12.     Through the use of the electronic bank signatures, the third-party bookkeeper improperly embezzled and misappropriated funds from the bank accounts of the properties owned by Plaintiff, and managed by Defendant.

13.     Defendant had no financial safeguards in place, and did not audit the accounts it oversaw in trust, to prevent the Bookkeeper's illegal activity, or to learn of such activity after it occurred.

## VI.
## COUNT 1—NEGLIGENCE/NEGLIGENT HIRING AND SUPERVISION

14.     Austin incorporates by reference the allegations set forth in paragraphs 6 through 13, above.

15.     Defendant, as property manager and trustee, owed a duty to properly monitor, manage, and oversee the accounting and bookkeeping for the Properties, including but not limited to, verifying collected rents, verifying paid expenses, and verifying the accuracy of the financial statements.

16.     Defendant, as property manager and trustee, owed a duty to monitor, manage, and oversee those entities or individuals, including the Bookkeeper, responsible for the proper receipt of income and payment of expenses related to the Properties.

PLAINTIFF'S ORIGINAL PETITION                                                        Page 3 of 6

17.     Defendant breached its duty to manage the Properties by failing to adequately monitor, manage, and oversee the accounting and bookkeeping for the Properties.

18.     Specifically, Defendant failed to properly account for the income and expenses for the Properties; ensure the accuracy of the financial statements; monitor, manage, and oversee the Bookkeeper to whom he gave access to all the Properties' bank transactions and entrusted its electronic signature; and properly audit the financial records associated with the Properties.

19.     Defendant's negligence was the proximate cause of Austin's economic losses. As a result, Austin seeks damages within the jurisdictional limits of this court.

## VII.
## COUNT 2—BREACH OF FIDUCIARY DUTY

20.     Austin incorporates by reference the allegations set forth in paragraphs 6 through 13 above.

21.     As trustee, Defendant had a fiduciary relationship with Austin as an interest owner in the Properties. Specifically, Defendant owed Austin the following duties: a duty of loyalty and utmost good faith; duty of candor; duty to refrain from self-dealing; duty to act with integrity of the strictest kind; duty of fair, honest dealing; and a duty of full disclosure.

22.     Also, as a trustee, Defendant had a duty to properly account for the income and expenses for the Properties; ensure the accuracy of the financial statements; monitor, manage, and oversee the Bookkeeper to whom he gave access to all the Properties' bank transactions and entrusted its electronic signature; properly audit the financial records associated with the Properties; properly manage, supervise, and safeguard the Properties' funds; and to invest and manage the Properties' assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the Properties.

23.     Defendant breached the foregoing fiduciary duties owed to Austin as an interest owner in the Properties by failing to conduct its affairs in conformance with the duties set forth above.

24.     Defendant's breach caused actual injury to Austin. As a result, Austin seeks damages within the jurisdictional limits.

## VIII.
## JURY DEMAND

25.     Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## IX.
## CONDITIONS PRECEDENT

26.     All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

## X.
## REQUEST FOR DISCLOSURE

27.     Under Texas Rue of Civil Procedure 194, Plaintiff requests that Defendant disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## PRAYER

WHEREFORE, Plaintiff asks that the Court issue a citation for Defendant to appear and answer, and that the Plaintiff be awarded judgment against the Defendant as follows:

a.     Actual damages;

b.     Prejudgment interest;

c.     Post-judgment interest;

d.     Court costs; and

e.    All other relief to which plaintiff is entitled, general and special, legal or equitable.

Respectfully submitted,

*/s/ John Ben Blanchard*
John Ben Blanchard
State Bar No. 02446200
jblanchard@bf-law.com
BROWN & FORTUNATO, P.C.
905 S. Fillmore, Suite 400 (79101)
P.O. Box 9418
Amarillo, Texas 79105-9418
(806) 345-6300 Telephone
(806) 345-6363 Facsimile

**ATTORNEYS FOR PLAINTIFF**

F:\DOCS\5885\001\PLEADING\29B3015.DOCX

Lori Ingram
_____

| | |
|---|---|
| **From:** | Johnathan Hinders |
| **Sent:** | Wednesday, December 28, 2016 1:24 PM |
| **To:** | Lori Ingram |
| **Subject:** | Pat Davis v. Hanover Petition |
| **Attachments:** | Ex. B and C.wdl; 16-17 Policy.pdf |

Lori,

Once we get Pat's approval, we will be filing a petition against his insurance carrier (this afternoon, I imagine). These are the Exhibits. I've already labeled B & C, but Exhibit "A"—the policy—freezes adobe every time I try to apply a header. Hopefully, it will cooperate for you.

**John Hinders**
**Associate Attorney**
**Mullin Hoard & Brown, LLP**
500 S. Taylor, Suite 800
Amarillo National Bank Plaza II
Amarillo, Texas 79101

**806.372.5050**
**806.372.5086 - fax**

Mailing Address:
P. O. Box 31656
Amarillo, TX 79120-1656

www.mullinhoard.com
jhinders@mhba.com

This email contains confidential information (including any attachments) belonging to the sender or his client which may be protected from disclosure by the attorney-client privilege, the attorney or core work product immunity, the work product immunity, and/or other privilege or immunity. This confidential information is intended only for the use of the individuals or entities identified above. If you are not the intended recipient, you are hereby notified that any use, disclosure, copying, distribution, dissemination, or the taking of any action in reliance on the contents of the emailed information, is strictly prohibited. If you have received this email in error, please immediately notify the sender by replying to the email or by telephone at 806.372.5050.

1

# Exhibit C

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

550 West Adams Street, Suite 300
Chicago, Illinois 60661
Telephone: 312.345.1718
Fax: 312.345.1778
www.lewisbrisbois.com

DARCY L. IBACH
DIRECT DIAL: 312.463.3339
DARCY.IBACH@LEWISBRISBOIS.COM

December 8, 2016

*VIA REGULAR AND CERTIFIED MAIL*
Pat Davis, Inc.
Mr. Pat Davis
4001 S. Western
Amarillo, TX  79109

Re:  Insured:      Pat Davis, Inc.
     Insurer:      Hanover Insurance Company
     Policy No.:   LHD A256124 02
     Policy Period: 03/26/16 to 03/26/17
     Claim No.     15-00785997
     Suit:         James Austin, III v. Pat Davis, Inc. d/b/a Pat Davis Properties,
     Cause No.:    70990C, District Court for Randall County, Texas
     Claimant:     James Austin, III

Dear Mr. Davis:

Please be advised that The Hanover Insurance Company ("Hanover") has reviewed the *Austin* complaint filed against Pat Davis, Inc., d/b/a Pat Davis Properties (referred to herein as "you" and/or "Davis"), which seeks damages resulting from the embezzlement of two independent bookkeepers that you retained. The *Austin* complaint was filed by James Austin, III who alleges in the complaint that the third-party bookkeepers Davis hired "embezzled and misappropriated funds" from Austin's bank accounts of the properties owned that Pat Davis managed.  Coverage for this suit is excluded under the referenced Hanover policy.  Accordingly, as we explain below, Hanover . must respectfully deny any defense or indemnity for the *Austin* suit.

In addition, Hanover reserves its rights to deny coverage on the basis that any wrongful act occurred before the policy's retroactive date, that an insured had prior knowledge of the claim before the policy's effective date and that the terms of the insuring agreement cannot be satisfied absent any "wrongful act" or "professional services", as those terms are defined by the policy.  Hanover also reserves its rights to deny indemnity coverage for any personal profit, gain or advantage for which any insured was not legally entitled.

ARIZONA • CALIFORNIA • COLORADO • CONNECTICUT • FLORIDA • GEORGIA • ILLINOIS • INDIANA • KANSAS • KENTUCKY • LOUISIANA • MARYLAND • MASSACHUSETTS • MISSOURI •
NEVADA • NEW JERSEY • NEW MEXICO • NEW YORK • NORTH CAROLINA • OHIO • OREGON • PENNSYLVANIA • RHODE ISLAND • TEXAS • WASHINGTON • WEST VIRGINIA

-7037.1

## BACKGROUND

### The Davis Complaint

Davis hired third-party bookkeepers, Amanda Felder and Derrick Roberts, to provide bookkeeping services for its properties. Beginning at least as early as July 2009, these bookkeepers began embezzling money from Davis and its clients. In July 2016, you filed suit in state court in Randall County, Texas against Felder and Roberts alleging that they embezzled $1.5M to $1.9M from client accounts, as well as from the company's account. Specifically, the defendants withdrew at least $1,879,544.30 for their own benefit and without your knowledge or authorization. Of this amount, Felder received $1,177,956.79 and Roberts received $555,228.95. Georgia Street Mall, a business owned and operated by Felder and Roberts and also a defendant in your suit, is alleged to have received $372,784.22 of the embezzled funds.

The *Davis* complaint asserts three causes of action, including Count I for violation of the Texas Theft Liability Act, which alleges that Felder and Roberts unlawfully appropriated Davis's property by removing funds from accounts and by making draws on lines of credit controlled without your knowledge and authorization. Count I alleges that the defendants intended to permanently withhold the property from Davis and, therefore, was made with the intent to deprive you of the property. Count 2 of the complaint for seeks equitable relief for "money had and received" to which the defendants were not entitled. Count 3 asserts a claim for fraud. The relief sought includes attorney fees, compensatory damages of $1,879,544.30, statutory damages of up to $1,000 from the defendant, equitable damages, exemplary damages, pre-judgment interest and post-judgment interest. In addition, the complaint seeks a temporary restraining order without notice to the defendants and, upon hearing, a preliminary injunction.

### The Austin Complaint

On November 11, 2016, James Austin, III filed a two-count complaint, against Davis, which also is pending in state court in Randall County, Texas. The complaint alleges that Austin hired Davis to manage three properties in which he owned an interest. Davis's duties included collecting rents and revenues and paying expenses associated with the properties. The complaint alleges that the third-party bookkeepers Davis hired "embezzled and misappropriated funds" from Austin's bank accounts for properties that Davis managed.

Count 1 of the *Austin* complaint alleges negligence against Davis for negligently hiring and supervising the third-party bookkeeper. It alleges that Davis breached its duties owed to Austin by, among other things, failing to manage the accounting and bookkeeping, which was the proximate cause of Austin's economic losses. Count 2 seeks alleges breach of Davis's fiduciary duties owed to Austin, including the duties of good faith, candor and refraining from self-dealing. Austin asserts a breach of the duty to safeguard funds. Austin seeks relief of actual



damages, prejudgment interest, post-judgment interest and costs.  We understand that Steve Hoard is representing Davis in both actions.

**THE HANOVER POLICY**

You should read your policy in full, but, for the ease of referenced, the following provisions, terms and exclusions are relevant to this claim:

**Please read this policy carefully.**

Throughout this **policy**, the terms **we, us** and **our** refer to the **Company** providing this insurance. The terms **you** and **your** refer to the persons and entities insured under this **policy**. Other terms in bold print have special meaning and are defined in the **policy**.

### A.  COVERAGE – WHAT THIS POLICY INSURES

1. Professional Services Coverage

**We** will pay on **your** behalf those sums which **you** become legally obligated to pay as **damages** and **claim expenses** because of any **claim** made against **you** arising from a **wrongful act** in the rendering or failure to render **professional services** by **you**.

The following additional requirements and limitations shall apply to coverage provided under **A.1** above and **A.3.** and **A.4.** below:

a. The **wrongful act** must have first occurred on or after the applicable **retroactive date(s)**;

b. **You** had no knowledge of facts which could have reasonably caused **you** to foresee a **claim** , or any knowledge of the **claim,** prior to the effective date of this **policy**; and,

c. The **claim** must first be made and reported to **us** in writing during the **policy period** or any **extended reporting period,** if applicable, and must arise from any **wrongful act** to which this **policy** applies.

\*\*\*

### B.  DEFENSE AND SETTLEMENT (INCLUDED IN THE LIMIT OF LIABILITY)

**We** have the right to investigate and the exclusive right to defend any **claim** made under this **policy**, even if the allegations are groundless, false or fraudulent until there is a final adjudication against **you**. **We** are not obligated to defend any criminal investigation, criminal proceeding or prosecution against **you**. If a **claim** is not covered under this **policy**, **we** will have no duty to defend it.

\*\*\*

## D. DEFINITIONS

***

**Claim** means a written demand or **suit you** receive.

***

**Damages** means monetary judgments, awards or settlements unless otherwise excluded. Damages includes (i) pre-judgment interest; and (ii) post judgment interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court that part of judgment within the applicable limit of liability.

***

**Equitable relief** means a remedy not involving the payment of monetary damages.

***

**Insured** means:

1.      The **named insured**; and:

****

10.     An independent contractor for **claims** and **damages under Section A.1, 3, or 4,** but only while acting on **your** behalf and only if there is a signed agreement executed by the **named insured and** the independent contractor which:

    a)      Specifies the services to be performed by the independent contractor on the **named insured's** behalf;

    b)      Provides that the services performed by the independent contractor will be under the **named insured's** supervision;

    c)      States that the independent contractor will be indemnified by the **named insured** for the services performed on the **named insured's** behalf; and,

    d)      Is entered into before the **wrongful act** which leads to a **claim** or **potential claim.**

***

**Loss** means **claim expenses, damages** and **defense expenses** and does not include **equitable relief.**

**Potential claim** means any **wrongful act** or any facts or other circumstances which may subsequently give rise to a **claim.**

[1] **Professional services** means those services described in Item **6.** of the Declarations page which **you** perform for others including advice given or services

---

[1] As amended by the Real Estate Professional Services Endorsement.

performed by an **insured** for others as a **real estate agent**, but solely when such services are performed on behalf of an **insured** as a **real estate agency**, and provided that the **insured** is appropriately licensed by the state in which the insured is doing business.

### Item 6. PROFESSIONAL SERVICES

Property Manager, Leasing Agent and/or Real Estate Agent/Broker

\*\*\*

**Retroactive date(s)** refer to the dates shown in Item 5. of the Declarations. If no date is shown on the Declarations page the retroactive date will be inception date of the policy.

**Wrongful act** and **wrongful acts** means any actual or alleged negligent act, error, omission, or misstatement committed in **your professional services**.

\*\*\*

### E. EXCLUSIONS - WHAT THIS POLICY DOES NOT INSURE

This **policy** does not apply to **claim(s)**:

1. Cased [Based] upon, arising out of, or in any way relating directly or indirectly to any **insured**:

    a)   Committing any intentional, dishonest or fraudulent act or omission; or

    b)   Gaining any profit, remuneration or advantage to which such **insured** was not legally entitled, provided that this exclusion will not apply until a final adjudication establishes **a)** or **b)** above;

2. For any willful or criminal violation of any statute, rule or law;

3. For the return, restitution or reduction of professional fees or arising from any demand for **equitable relief;**

\* \* \*

11.   Arising out of false advertising, misrepresentation in advertising, antitrust, unfair competition, restraint of trade, unfair or deceptive business practices, including but not limited to, violations of any local, state or federal consumer protection laws;

\* \* \*

17.   Arising out of or resulting, directly or indirectly, from any actual or alleged commingling, misappropriation or improper use of funds or monies;

## COVERAGE RESERVATION AND DENIAL

As quoted, the Hanover policy's insuring agreement limits coverage to claims for "wrongful acts" that must have first occurred on or after the policy's applicable retroactive date, which, here, is March 26, 2009. (Policy A.1.a.). The *Davis* complaint alleges that Felder and Roberts began embezzling "at least as early as July 2009". The *Austin* complaint asserts wrongful acts by Davis with regard to the hiring and supervision of the bookkeepers who are alleged to have committed the embezzlement. If it is determined that any wrongful act first occurred before the policy's retroactive date, Hanover reserves its rights to deny coverage on this basis.

In addition, the policy limits coverage to claims that "you had no knowledge of facts which could have reasonably caused you to foresee a claim, or any knowledge of the claim, prior to the effective date of this policy." (Policy A.1.b). The policy defines "you" as those "persons and entities insured under the policy, and the definition of "insured" encompasses independent contractors which meet the qualifications set forth in the definition. By their very embezzlement, Felder and Roberts were aware of facts that could formulate a claim prior to the effective date of the policy. You allege that this misconduct had been occurring since July 2009. The insured hired and supervised these bookkeepers since on or before July 2009, and thus, Hanover reserves its rights to deny coverage if it is determined that an insured knew of the claim or potential claim before the effective date of the policy based upon both the policy language and common law. Please provide any written contract or papers entered into between Davis and Felder/Roberts regarding the scope of their bookkeeping services and advise of the nature of this business relationship.

As quoted, the Hanover policy's insuring agreement provides, in pertinent part, that it will pay sums that the insured becomes "legally obligated to pay as damages and claim expenses because of any claim made against you arising from a wrongful act in the rendering or failure to render professional services by you." Hanover reserves its rights to deny coverage if it is determined that the complained of conduct did not arise from a "wrongful act" or in the course of rendering or failing to render "professional services", as those terms are defined under the policy. Moreover, Hanover reserves its rights to deny coverage in that any damages sought are precluded by the economic loss doctrine and/or do not fall within the policy's definitions of "damages" or "loss".

Exclusion 1 to Hanover's policy precludes indemnity coverage for "the gaining by any insured of any personal profit, gain, or advantage to which any insured was not legally entitled". If it is determined that an insured personally received a profit, gain or advantage that it was not legally entitled as a result of the conduct complained of, Hanover reserves its rights to deny indemnity coverage based upon Exclusion 1.

Notwithstanding these reservations and subject thereto, Hanover must deny coverage for the *Austin* suit, including any defense, under Exclusion 17 contained in the policy. Exclusion 17 bars coverage for claims "arising out of or resulting, directly or indirectly from any actual or alleged commingling, misappropriation or improper use of funds or monies". This exclusion operates to

preclude coverage for this claim. The subject complaint asserts that funds were "embezzled and misappropriated" from the Austin accounts and that the insured failed to safeguard the Properties' funds. (*Austin* Complaint, para. 12, 22). As Exclusion 17 does not limit its applicability by who is alleged to have been or actually was commingling, misappropriating or improperly using funds or monies, it is enforceable here and excludes coverage for the *Austin* suit. Notably, but for the embezzlement claim, there would be no claim for negligent hiring and supervision and/or breach of the fiduciary duties.

The foregoing evaluation as to coverage is based upon, and is necessarily limited to, the materials currently in Hanover's possession. If you have any information which may impact this determination, please forward it to my attention at your earliest convenience. Hanover continues to reserve the right to raise other policy terms and conditions as defenses to coverage, which may be warranted in light of additional information received by Hanover. Hanover does not waive any rights it has or may have under the policy, at law or in equity, including those rights under terms of the policy not referenced in this letter. Nothing contained in or omitted from this letter should be construed as a waiver of any rights Hanover has or may have under the policy, at law or in equity.

As we previously advised, and if not already completed, we recommend that you immediately tender this matter to any other available insurance carriers for a determination of coverage.

Please contact me should you have any questions.

Very truly yours,

Darcy L. I bach

Cc: Steven L. Hoard, Esq.

Andrew Tyzenhaus
Senior Specialty Claim Consultant

---

Skip to Main Content  Logout  My Account  Search Menu  New Civil Search  Refine Search  Back

Location : All Courts   Help

# REGISTER OF ACTIONS
## CASE NO. 71259C

**PAT DAVIS, INC. vs. HANOVER INSURANCE GROUP**

§
§
§
§
§

Case Type: **Civil Case - Other**
Date Filed: **12/28/2016**
Location: **251st District Court**

---

### PARTY INFORMATION

**Attorneys**

**Defendant**   **HANOVER INSURANCE GROUP**

**Plaintiff**   **PAT DAVIS, INC.**

**STEVEN L. HOARD**
   *Retained*
   806-372-5050(W)

AMARILLO, TX 79109

**JONATHAN HUDSON HINDERS**
   *Retained*
   806-337-1119(W)

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 12/28/2016 | **Original Petition (OCA)** |
| | *for Declaratory Judgment, Equitable Relief & Damages* |
| 12/28/2016 | **CIVIL SCHEDULE REVIEW-18 Months** |
| 01/13/2017 | **REQUEST** |
| | *FOR ISSUANCE* |
| 01/16/2017 | **Citation Issued** |
| | *TO HANOVER INS. GROUP BY SERVING REGISTERED AGENT, CT CORP SYSTEM-CMS* |
| 01/18/2017 | **CERTIFIED MAIL RECEIPT (from Post Office)** |
| | *CT CORP SYSTEM (HANOVER INS. GROUP* |
| 01/23/2017 | **Citation Served** |
| | *HANOVER INS. GROUP BY SERVING CT CORP SYSTEM-GREEN CARD* |

---

### FINANCIAL INFORMATION

**Plaintiff PAT DAVIS, INC.**
Total Financial Assessment · 432.0(
Total Payments and Credits · 432.0(
**Balance Due as of 01/27/2017** · **0.0(**

| | | | |
|---|---|---|---|
| 12/29/2016 | Transaction Assessment | | 294.0( |
| 12/29/2016 | E-File Electronic Payment   Receipt # 2016-239737 | Pat Davis, Inc. | (294.00 |
| 12/29/2016 | Transaction Assessment | | 2.0( |
| 12/29/2016 | E-File Electronic Payment   Receipt # 2016-239746 | Pat Davis, Inc. | (2.00 |
| 01/13/2017 | Transaction Assessment | | 136.0( |
| 01/13/2017 | E-File Electronic Payment   Receipt # 2017-240555 | Pat Davis, Inc. | (136.00 |